STATE OF NEBRASKA, APPELLEE, V.
JAMES R. WORM, APPELLANT.
680 N.W.2d 151

Filed May 28, 2004.   No. S-02-1506.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Jon Bruning, Attorney General, Mark D. Raffety, and Jeffrey J. Lux for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

## I. INTRODUCTION

James R. Worm appeals his sentence for attempted first degree sexual assault on a child and the district court's finding that he was subject to the amended provisions of Nebraska's Sex Offender Registration Act (Act), Neb. Rev. Stat. §§ 29-4001 to 29-4013 (Cum. Supp. 2002). The court determined that Worm had committed an aggravated offense under an amendment that was not a part of the Act when the offense occurred. Worm contends that the court's finding violated the ex post facto clause and that he was denied procedural due process. We affirm.

## II. BACKGROUND

In April 2002, the State filed an information against Worm, charging him with first degree sexual assault on a child, a Class II felony. The victim was the 7-year-old daughter of the woman that Worm was then dating. The offense occurred on March 29, 2002.

In August, under a plea agreement, the State amended the information to charge Worm with attempted first degree sexual assault on a child, a Class III felony. At the hearing, the court informed Worm of the factual basis for the charge and the possible imprisonment terms, fines, and collateral consequences of a plea of guilty, including that he would be subject to the Act's terms and conditions. Worm pleaded guilty, and the court accepted his plea. Worm was also committed to the Lincoln Regional Center for psychiatric observation and treatment not to exceed 60 days.

In November 2002, after the 2002 amendments were in effect, Worm appeared for sentencing. Worm argued that the offense had occurred before the Act was substantively changed by the April 2002 amendments, which became effective July 20, 2002, see 2002 Neb. Laws, L.B. 564, and that the amended provisions should not be applied retroactively. The hearing was continued on this issue until December 13. When the hearing reconvened, the court determined the law's purpose was regulatory rather than punitive and that, therefore, the amendment was applicable to Worm. Also, the court found that Worm had committed an aggravated offense under § 29-4005(4)(a)(ii), but that the evidence did not show he was a sexually violent predator. The court informed Worm that because he had committed an aggravated offense, he must register for life, and explained his duties under the Act. The court sentenced him to 8 to 12 years' imprisonment, with credit given for time served.

## III. ASSIGNMENTS OF ERROR

Worm assigns that the district court erred in (1) determining that he had committed an aggravated offense under the amended Act in violation of the Ex Post Facto Clauses of the Nebraska and federal Constitutions, (2) determining that he had committed an aggravated offense under the amended Act without affording him procedural due process, and (3) imposing an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court

below. *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *State v. Spady*, 264 Neb. 99, 645 N.W.2d 539 (2002).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004).

## V. ANALYSIS

In April 2002, the Nebraska Legislature amended the Act to bring it in compliance with the federal law. The 1996 original Act required a person convicted of an enumerated sex offense, or its equivalent in another jurisdiction, to register with the Nebraska State Patrol's sex offender registry. Under this Act, the offender had to verify that registration on an annual basis for a period of 10 years after his or her release from a correctional facility or other institution, or after discharge from probation, parole, or supervised release. See §§ 29-4003 to 29-4005 (Cum. Supp. 2000).

In addition, the amendments added new sex offenses, aggravated offenses and repeat offenses, which require the offender to verify his or her registration annually. §§ 29-4003 and 29-4005(2) (Cum. Supp. 2002). An aggravated offense is defined as "any registrable offense . . . which involves the penetration of (i) a victim age twelve years or more through the use of force or the threat of serious violence or (ii) a victim under the age of twelve years." § 29-4005(4)(a). The amendments require the sentencing court to make the finding of an aggravated or repeat offense as part of the sentencing order. § 29-4005(2).

The amendments also require an offender to provide his or her place of vocation and any school which he or she attends in addition to the previous requirement of providing the offender's address and place of employment. 2002 Neb. Laws, L.B. 564. Under both versions, the Act is retroactive to defendants convicted of or pleading guilty to most registrable offenses on or before January 1, 1997. *Id.*

The amendments, however, did not substantively change the sections concerning community notification. The Nebraska

State Patrol's registration and community notification division is responsible for assigning a notification level after an offender initially registers. The assigned notification corresponds to the offender's assessed recidivism risk, which can be assessed as low, moderate, or high. See § 29-4013(2). If the risk is low, law enforcement officials who are likely to encounter the offender are notified of the registry information. § 29-4013(2)(c)(i). If the recidivism risk is moderate, schools, daycare centers, and youth and religious organizations are additionally notified. § 29-4013(2)(c)(ii). If the recidivism risk is high, individuals likely to encounter the offender must also be notified, in addition to those notified for low and moderate notification levels. § 29-4013(2)(c)(iii). If a risk assessment indicates that public notification is warranted, it can be accomplished by direct contact, news releases, or a method using a telephone system, including an electronic database. *Id.* See, also, 272 Neb. Admin. Code, ch. 19, § 013.06 (2003). The State Patrol maintains a public Web site, which disseminates specified information about offenders only if they are assigned a high-risk notification level.

## 1. RIPENESS

### (a) Registration Provisions

The State argues that Worm's constitutional challenges are not properly before this court because the Act's requirements are collateral to the criminal conviction. The State relies on two cases in which we held that the registration provisions were collateral to the defendant's conviction. See *State v. Torres*, 254 Neb. 91, 574 N.W.2d 153 (1998), and *State v. Schneider*, 263 Neb. 318, 640 N.W.2d 8 (2002). Worm, however, contends that his constitutional challenges to the Act are properly before this court, because after the Act was amended, the sentencing court had an affirmative duty to determine whether an aggravated offense had occurred, thus triggering a lifetime registration requirement.

In *Torres*, we held that a defendant who was subject to the registration requirements lacked standing to challenge the Act in a direct appeal from the underlying conviction because the Act's registration requirements were separate and collateral to the sexual offense that had triggered the requirements. We held that "the

district court's order did not address the [Act's] requirements; rather, the [Act's] registration requirements arose solely and independently by the terms of the [A]ct itself only *after* Torres' conviction." (Emphasis in original). 254 Neb. at 95, 574 N.W.2d at 155.

*Torres* is distinguishable in two respects. First, the defendant in *Torres* argued that the Act constituted an ex post facto law because it *potentially* increased his sentence by imposing an additional penalty if he *failed* to register. He did not argue that the registration requirements themselves violated the ex post facto clause as retroactive punishment.

Second, unlike the 10-year registration requirement for the registrable offense in *Torres*, the lifetime registration requirement for an aggravated offense does not arise solely and independently from the defendant's conviction. Rather, the amendments require the court, as part of the sentence, to determine if the defendant committed an aggravated offense. See § 29-4005(2). As such, the court's finding that Worm committed an aggravated offense was part of the court's judgment. See *People v. Hernandez*, 93 N.Y.2d 261, 711 N.E.2d 972, 689 N.Y.S.2d 695 (1999).

Neither is *Schneider* controlling. In *Schneider*, this court determined that a guilty plea was not involuntary or unintelligent because the trial court failed to inform the defendant of the Act's requirements before accepting his plea. We relied on *Torres* in concluding that the requirements were a collateral consequence of the defendant's plea and that it had no direct effect on the range of the defendant's possible sentences or incarceration periods. *Schneider, supra*. Ripeness, however, was not an issue in that case. We specifically declined to use the intent-effects test for analyzing the penal nature of the statutory scheme because the defendant had not raised a double jeopardy or ex post facto challenge. *Id.*

■ Thus, we determine that the registration requirement for an offender convicted of an aggravated offense under the Act's amended provisions is part of the sentencing court's judgment for purposes of filing an appeal. Worm's constitutional challenges to the Act's registration provisions are properly before this court.

### (b) Notification Provisions

Worm also argues that the Act's notification provisions are punitive and violate his right to procedural due process. Worm, however, is currently incarcerated, and thus, has not yet registered. Under both the original and the Act's amended versions, offenders sentenced to a term of incarceration for a registrable offense are not required to register until they are released, paroled, or placed on probation, unless they are free pending an appeal. See 2002 Neb. Laws, L.B. 564. Because he has not registered, he has not yet been assessed for the applicable level of community notification. See 272 Neb. Admin. Code, ch. 19, § 012.01 (2003).

■ Worm, however, argues that "[g]iven the district court's determination . . . that [Worm] committed an aggravated offense, the State Patrol is very likely to classify [him] as a high risk offender, and thus subject to having his personal information readily available to the public through the Internet and through print media." Brief for appellant at 13-14. The Act however, does not require a mandatory high-risk assessment for persons who have committed an aggravated offense. Rather, it requires the State Patrol to assess a registrant based on many factors, including the sex offender's response to treatment and behavior while confined. § 29-4013(2)(b). This assessment has not been made, and the notification level that the State Patrol will assign to Worm is mere speculation at this point. Worm's argument demonstrates that his constitutional challenges to the Act's notification provisions are not yet ripe for appellate review. See *State v. Hansen*, 259 Neb. 764, 612 N.W.2d 477 (2000) (declining to address challenge to statute allowing court to order compliance with alcohol assessment when assessment had not been made). See, also, *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235 (3d Cir. 1996) (determining that constitutional challenges to notification provisions of New Jersey's Sexual Offender Registration Act were not ripe when notification hinged upon risk assessment that had not yet been performed). We limit Worm's constitutional challenges to the registration requirements.

### 2. Ex Post Facto Challenge

Worm argues that the court's finding that he had committed an aggravated offense violated the ex post facto clause because

an aggravated offense and its attendant requirements did not exist when he committed a registrable offense. He argues that the clause is violated because the amendment is punitive, since he now must register for life, instead of 10 years.

Both U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, provide that no ex post facto law may be passed. A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts. *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003). This court ordinarily construes Nebraska's ex post facto clause to provide no greater protections than those guaranteed by the federal Constitution. See, e.g., *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999), citing *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

Admittedly, the lifetime registration requirement for committing an aggravated offense did not exist when Worm committed his offense in March 2002. See 2002 Neb. Laws, L.B. 564 (approved April 16, 2002, and effective July 20, 2002). However, the retroactive application for civil disabilities and sanctions is permitted; only retroactive criminal punishment for past acts is prohibited. See, *Doe v. Pataki*, 120 F.3d 1263 (2d Cir. 1997); *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997). Cf. *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998). Here, whether the amendment violates state and federal constitutional proscriptions against retroactive punishment is analyzed under the U.S. Supreme Court's two-prong, "intent-effects" test for analyzing punishment. See *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). If a court determines that the Legislature intended a statutory scheme to be civil, that intent will be rejected " 'only where a party challenging the [statute] provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention.' " *State v. Isham*, 261 Neb. 690, 694, 625 N.W.2d 511, 515 (2001).

We recognized that the intent-effects test can apply to either a double jeopardy or ex post facto challenge to a statutory scheme. *State v. Schneider*, 263 Neb. 318, 640 N.W.2d 8 (2002). Although we have not applied the test in analyzing an ex post

facto challenge to a statutory scheme, we have applied it to a double jeopardy challenge. See, *Isham, supra*; *Howell, supra*.

## (a) Legislative Intent Prong

■ The Act will pass the intent prong if the Legislature intended to establish a civil regulatory scheme to remedy a present situation and "'the restriction of the individual comes about as a relevant incident to [the] regulation.'" *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1254 (3d Cir. 1996), quoting *De Veau v. Braisted*, 363 U.S. 144, 80 S. Ct. 1146, 4 L. Ed. 2d 1109 (1960). See *Howell, supra*. Whether the Legislature intended the amendments to be civil or criminal is primarily a matter of statutory construction. However, we must also look at the statute's structure and design. *Isham, supra*; *Howell, supra*.

The Legislature stated two main reasons for enacting the original Act: (1) sex offenders present a high risk to commit repeat offenses and (2) law enforcement agencies' efforts to protect communities, conduct investigations, and quickly apprehend sex offenders had been impaired by a lack of available information about sex offenders who live in their jurisdictions. § 29-4002 (Cum. Supp. 2000). These findings show that the Act has a dual purpose: protecting the public and assisting law enforcement in future efforts to investigate and resolve sex offenses. Moreover, this court has held that promoting public safety evidences a civil regulatory scheme. See, *Isham, supra*; *Howell, supra*.

Worm, however, argues that assisting law enforcement agencies with future investigations and prosecutions evidences a punitive purpose in enacting the law. But assisting future law enforcement efforts by monitoring an offender's whereabouts does not inflict punishment and furthers the legitimate regulatory goal of protecting the public and preventing crime. See, e.g., *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997); *Doe v. Pataki*, 120 F.3d 1263 (2d Cir. 1997); *Artway, supra*.

When looking at the statute's structure and design, the primary consideration is the procedural mechanisms established by the Legislature to enforce the statute. *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998). The regulations use an administrative hearing and an appeal process under Nebraska's Administrative Procedure Act for challenging the registration and notification

requirements. See 272 Neb. Admin. Code, ch. 19, § 004 (2003). Thus, the requirement that an offender follow the Administrative Procedure Act for contesting and appealing administrative decisions evidences a civil, nonpunitive statute. See *Howell, supra.*

Moreover, that the sentencing court must find whether an aggravated offense occurred as part of the sentencing order does not indicate an intent to impose punishment because the court has no discretion; the finding is mandatory. The U.S. Supreme Court recently considered an ex post facto challenge to Alaska's sex offender registry in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Alaska's statutes similarly required a sentencing court to set out in the written judgment " 'the requirements of [the Alaska Sex Offender Registration Act] and, if it can be determined by the court, whether that conviction will require the offender or kidnapper to register for life or a lesser period.' " 538 U.S. at 95. The Court determined that this sentencing requirement did not make the registration punitive. It reasoned that using the sentencing court provided a timely and adequate notice to offenders of their registration obligations and the criminal consequences for failing to comply. *Id.*

Similarly in Nebraska—if the offender is not incarcerated pending an appeal or if the offender is sentenced to probation—the registration requirements begin immediately. See 272 Neb. Admin. Code, ch. 19, § 006.03 (2003). Thus, prompt notification of the Act's requirements and its criminal penalty for noncompliance is essential in some cases. As in *Smith*, the Act's mandatory requirement of a finding whether an aggravated offense occurred provides a prompt notification. We conclude that the Legislature intended to create a civil regulatory scheme to protect the public from the danger posed by sex offenders, which intent is not altered by the statute's structure or design.

### (b) Effects of Registration Requirements

Next, we analyze whether the purpose or effect of the statute is so punitive as to negate the Legislature's intent. In making that determination, we consider the factors set out by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963):

"(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment—retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.'"

*State v. Isham*, 261 Neb. 690, 695, 625 N.W.2d 511, 515-16 (2001), quoting *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). See, also, *United States v. Ward*, 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980).

### (i) Relevance of Scienter and Criminal Behavior Factors

In *Smith*, the Court concluded that two factors received little weight in analyzing the effect of Alaska's registry statutes: (1) whether the regulation comes into play only upon a finding of scienter and (2) whether the behavior to which it applies is already a crime. The Court determined that because the statutory concern was recidivism, the offender's past criminal conduct was a necessary beginning point. *Id.* See, also, *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998). Here, we agree that the scienter and criminal behavior factors are not relevant to determining whether a criminal registration statute imposes punishment.

### (ii) Affirmative Disability or Restraint

The Alaskan statutes considered in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), required registrants who had been convicted of an aggravated offense to verify their registration quarterly for life. But the Court determined that the requirement was not an affirmative disability or restraint because registrants were free to live and work where they wanted without supervision. *Id.* Accord, *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999); *State v. Ward*, 123 Wash. 2d 488, 869 P.2d 1062 (1994).

Similarly, although Worm must notify law enforcement agencies of changes in his address, occupation, vocation, or school

attendance, the Act does not require him to seek permission. See *Cutshall, supra.* After his initial registration, which must be completed in person, Worm may verify his registration information annually. See 272 Neb. Admin. Code, ch. 19, §§ 006.07 and 009 (2003). These requirements pose a lesser burden than revoking a driver's license or a professional license—sanctions which this court has previously held are civil in nature. See, *Isham, supra*; *State v. Wolf*, 250 Neb. 352, 549 N.W.2d 183 (1996). Further, the statute upheld in *Smith* required offenders who had committed an aggravated offense to verify their registration on a quarterly basis for life. Here, the burden posed by the Act's registration provisions is slight. The annual verification obligation is significantly less burdensome than the quarterly verification obligation upheld in *Smith*. We conclude that Nebraska's registration provisions do not impose an affirmative disability or restraint on the registrant.

### (iii) Historically Regarded as Punishment

Sex offender registries are a relatively new occurrence and have not been historically regarded as punishment. See, *Smith, supra*; *Doe v. Pataki*, 120 F.3d 1263 (2d Cir. 1997); *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997). The Supreme Court noted in *Smith* that the "imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" 538 U.S. at 93, quoting *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). Further, criminal registration in general has not been traditionally viewed as punishment; instead, it serves to make relevant information available to law enforcement. See, *Lambert v. California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957) (felony registration is permissible law enforcement procedure); *People v. Adams*, 144 Ill. 2d 381, 581 N.E.2d 637, 163 Ill. Dec. 483 (1991).

### (iv) Traditional Aims of Punishment

Courts generally hold that registration statutes do not promote the traditional aims of punishment: retribution and deterrence. It is true that regardless of a sex offender's risk assessment, local law enforcement will be notified of the offender's presence in

their community. This fact would presumably have some deterrent effect on the registrant's activities, but this effect is minimal when compared to the threat of conviction and incarceration for a new offense. See, *State v. Burr*, 598 N.W.2d 147 (N.D. 1999); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995); *Adams, supra.* Compare *State v. Hansen*, 249 Neb. 177, 189, 542 N.W.2d 424, 433 (1996) (concluding that "substantial remedial purposes underlie the administrative license revocation statutes" which are "not defeated by the fact that the statutes also play a role in deterring others from driving drunk"). See, also, *Smith v. Doe*, 538 U.S. 84, 98, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) ("[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment").

Further, the registration provisions cannot be said to serve a retributive purpose. We have already determined that the requirement does not impose an affirmative disability. Nor does registration in itself involve public notice. Unless an offender is assessed as having a moderate or high recidivism risk, the registration information is provided only to law enforcement agencies, which already have access to criminal histories. See Neb. Rev. Stat. §§ 29-3501 to 29-3528 (Reissue 1995, Cum. Supp. 2002 & Supp. 2003) (Security, Privacy, and Dissemination of Criminal History Information Act). Thus, registration, considered apart from notification, is unlikely to result in any stigma.

### (v) Sanction's Excessiveness in Relation to Alternative Purpose

Finally, the registration requirement is not excessive in relation to its assigned nonpunitive purpose—to protect the public and aid law enforcement. The length of the registration requirement must necessarily correspond to the recidivism risk for that offense classification to carry out the statute's intent. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences," particularly for minor conditions such as registration. *Smith*, 538 U.S. at 103-04 (noting that duration of registration requirement is based on empirical research showing that reoffenses can occur as much as 20 years after release).

We determine that the Act's offense categories and related registration periods "are reasonably related to the danger of recidivism" and "consistent with the regulatory objective." See 538 U.S. at 102.

We conclude that Worm has failed to show by the clearest proof that the Act's registration provisions are so punitive in either purpose or effect as to negate the State's intention. Because the registration provisions are not punitive, we defer to the Legislature's determination of what remedial action is necessary to achieve the Legislature's goals. See *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998).

### 3. DUE PROCESS

Worm contends that the Act violated his right to procedural due process because it did not afford him notice and a hearing before the district court determined that he had committed an aggravated offense. This determination increased the applicable registration period for him from 10 years to life. Worm argues that the Act deprives him of a liberty interest in privacy because publicly disclosing his personal information, including employment information, will likely make employers reluctant to hire him. .

Procedural due process limits the government's ability to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause. Due Process requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). The first step in a due process analysis is to identify a property or liberty interest entitled to due process protections. *Id.*

Reputational damage caused by state action which results in a person's stigmatization can implicate a protected liberty interest, but only if it is coupled with some more tangible interest such as employment. See *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001), quoting *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). This requirement of a tangible interest is referred to as the "stigma plus" test. *Benitez, supra.*

Worm correctly argues that the regulations currently provide that the State Patrol "may" disseminate employment information if an offender is determined to have a high risk classification. See

272 Neb. Admin. Code, ch. 19, § 013.05 (2003). As discussed, however, Worm's risk classification and notification level has not been made. For offenders with a low recidivism risk, the registry information is made available only to the law enforcement agencies in the jurisdiction where an offender lives after release from incarceration or during placement on parole or probation. Thus, at this point, Worm has failed to show that he will be subjected to any public notification, and the issue is not yet ripe for review. Additionally, we note that all offenders are given an opportunity to ask for a hearing on their assigned risk classification level after the State Patrol notifies them. See 272 Neb. Admin. Code, ch. 19, § 015.01 (2003) (allowing offenders 5 days to mail in request for hearing to contest classification after receiving notice).

The only issue currently before this court is the registration requirements, which do not involve public notice. Because Worm's argument for reputational damage is related only to the notification provisions, he has failed to show that he has a liberty interest entitled to due process protection. We conclude that Worm's due process argument must fail. See *Benitez, supra.*

### 4. EXCESSIVE SENTENCE

Finally, Worm argues that the district court abused its discretion by imposing an 8- to 12-year prison sentence and by not placing him on probation. He further argues that his crime was mitigated by his history of mental health disorders.

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Hubbard,* 267 Neb. 316, 673 N.W.2d 567 (2004). Whether the sentence imposed is probation or incarceration is a matter within the trial court's discretion, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Spurgin,* 261 Neb. 427, 623 N.W.2d 644 (2001). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hurbenca,* 266 Neb. 853, 669 N.W.2d 668 (2003).

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and

circumstances surrounding the defendant's life. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

The offense for which Worm was convicted, attempted first degree sexual assault, is a Class III felony. See Neb. Rev. Stat. §§ 28-319(1)(c) and (2) (Reissue 1995) and 28-201(4)(b) (Cum. Supp. 2002). Worm's 8- to 12-year prison sentence is within the statutory limits of Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2000), which provides for a maximum of 20 years' imprisonment for a Class III felony.

Worm's presentence investigation report indicated that he was not a candidate for intensive supervision probation because of the offense, his criminal history, and his risks or needs assessment. His psychiatric examinations and interviews showed a diagnosis of pedophilia, antisocial personality disorder, and other mental health disorders. Although Worm argues that his previous convictions did not involve violent offenses, the presentence investigation report showed an inability to control aggressive and violent behaviors. Worm's presentence report showed he had a moderate risk of future sexual offending and a high risk for general recidivism within a 7- to 10-year timeframe.

We conclude that the trial court did not abuse its discretion in sentencing as it did, nor in refusing to place Worm on probation.

## VI. CONCLUSION

We conclude that Worm's lifetime registration requirement for an aggravated offense under the amended provisions of Nebraska's Sex Offender Registration Act is part of the sentencing court's judgment for purposes of filing an appeal. Thus, his constitutional challenges to the registration requirement are properly before this court in his direct appeal. We conclude that his challenges to the Act's notification provisions, however, are not yet ripe for appellate review. We conclude that the registration requirements do not impermissibly impose retroactive punishment and that Worm's due process argument must fail because Worm has failed to show that the registration requirement deprives him of a protected liberty interest. Finally, we conclude that the district court did not abuse its discretion in the sentence it imposed.

AFFIRMED.