GERALD G. WELVAERT, JR., APPELLANT, V.
NEBRASKA STATE PATROL, APPELLEE.
683 N.W.2d 357

Filed July 16, 2004. No. S-03-1006.

Donald L. Schense, of Law Office of Donald L. Schense, for appellant.

Jon Bruning, Attorney General, and Mark D. Starr for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Between 1994 and 1996, Gerald G. Welvaert, Jr., had sexual intercourse and/or sexual contact with four underage females. Welvaert was charged and pled guilty to four sex-related offenses, and was sentenced to a term of 18 to 24 months' imprisonment.

After his release from prison, the Nebraska State Patrol (NSP), pursuant to the Sex Offender Registration Act (SORA), Neb. Rev. Stat. § 29-4001 et seq. (Cum. Supp. 2000), determined that Welvaert was at a high risk to reoffend sexually and classified him as a Level 3 sex offender. Welvaert appealed, and the district court affirmed the NSP's determination. On appeal, Welvaert contends that the NSP's risk assessment instrument is invalid and that SORA violates the Ex Post Facto Clause of the U.S. Constitution. For the following reasons, we affirm the judgment of the district court.

## I. SORA

Welvaert's appeal represents the third recent challenge to SORA. See, *Slansky v. Nebraska State Patrol, ante* p. 360, 685 N.W.2d 335 (2004); *State v. Worm, ante* p. 74, 680 N.W.2d 151 (2004). In *Slansky* and *Worm*, we discussed, at length, the pertinent features of SORA and the rules and regulations that implement SORA. In *Slansky*, we also discussed the risk assessment instrument that was developed to classify sex offenders under SORA. Therefore, it is unnecessary to repeat our review of SORA's features and the risk assessment instrument, and we direct the reader to *Slansky* and *Worm* for such background information.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1994, when he was 25 years old, Welvaert had sexual intercourse with his 13- or 14-year-old cousin. During the next 2 years, Welvaert had sexual intercourse and/or sexual contact with three other young females, ages 14 to 16. As a result, four sex-related charges—three Class II felony counts and one Class IV felony count—were brought against Welvaert. Welvaert testified that in July 1996, he pled guilty to the four felonies and was sentenced to serve 18 to 24 months' imprisonment and 5 years' probation. In July 1997, Welvaert was released from prison; he remained on probation through 2001.

On January 26, 2000, an investigator for the NSP completed a risk assessment for Welvaert using the NSP's risk assessment instrument. Welvaert scored 185 points on the instrument and was classified as a Level 3 sex offender. Thereafter, on March 14, the NSP sent Welvaert a letter, notifying him that the NSP

Sex Offender Registry had determined that he was at a high risk to reoffend sexually and that therefore, he had been classified as a Level 3 sex offender. The letter stated that a Level 3 classification requires the NSP to provide information concerning him to the public, appropriate law enforcement officials, schools, daycare centers, and youth and religious organizations, and that such notification would be done through news releases and other avenues as deemed appropriate. In addition, the letter notified Welvaert that if he disagreed with this determination, he could request a hearing to contest the classification. Soon thereafter, Welvaert gave notice of his intent to contest the classification and the grounds therefor.

At the administrative hearing, the NSP stipulated that 10 points should be deducted from Welvaert's score in regard to item 10 (release environment) because he was on probation, i.e., under supervision, at the time the instrument was scored. In addition, the hearing officer determined that 10 points should be deducted in regard to item 11 (disciplinary history while incarcerated) because prior to Welvaert's hearing, the instrument was revised to eliminate the assessment of points for nonviolent disciplinary infractions. Accordingly, the hearing officer reduced Welvaert's overall score by 20 points. Despite this reduction, Welvaert's amended score was still 165, or 35 points more than needed to classify him as a Level 3 offender. Noting Welvaert's score and stating that Welvaert failed to present sufficient mitigating evidence to support a downward departure, the hearing officer recommended that the NSP's decision classifying Welvaert as a Level 3 sex offender be upheld. Thereafter, on August 13, 2002, the superintendent of the NSP issued an order adopting the recommended decision of the hearing officer in full and making it the final decision of the NSP.

On September 12, 2002, pursuant to the Administrative Procedure Act, see Neb. Rev. Stat. § 84-901 et seq. (Reissue 1999 & Supp. 2003), Welvaert filed a petition in the district court for Lancaster County, appealing his classification as a Level 3 sex offender. See 272 Neb. Admin. Code, ch. 19, § 014.02 (2000). On July 30, 2003, the district court entered its order affirming the decision of the NSP.

Welvaert filed a timely notice of appeal, and the NSP, noting that Welvaert's appeal challenged the constitutionality of SORA, filed a petition to bypass the Nebraska Court of Appeals. We granted the NSP's petition based on our exclusive jurisdiction to decide cases involving the constitutionality of a statute. See Neb. Rev. Stat. § 24-1106(1) (Reissue 1995).

## III. ASSIGNMENTS OF ERROR

Welvaert assigns that the district court (1) erred in affirming the decision of the NSP and (2) abused its discretion in affirming the decision of the NSP.

## IV. STANDARD OF REVIEW

 Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *Slansky v. Nebraska State Patrol, ante* p. 360, 685 N.W.2d 335 (2004). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Id.*

 A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Id.* When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

## V. ANALYSIS

Under these broad assignments of error, Welvaert makes two arguments: (1) The NSP's risk assessment instrument is invalid because it is a flawed indicator of a sex offender's risk of recidivism and (2) SORA violates the Ex Post Facto Clause of the U.S. Constitution.

## 1. RISK ASSESSMENT INSTRUMENT

Welvaert argues that the risk assessment instrument is invalid because it is a flawed indicator of recidivism. Welvaert raises seven general complaints concerning the risk assessment instrument and the assessment process.

First, Welvaert contends that the instrument is invalid because "[t]oo much variability presently exists between the states so that no uniformity [or] consistency exists in this classification process." Brief for appellant at 5. Welvaert does not explain, however, how the absence of nationwide uniformity in sex offender registration statutes makes the NSP's risk assessment instrument invalid. We decline to speculate on possible arguments in this regard and find Welvaert's first contention to be without merit.

Second, Welvaert contends that the instrument is invalid because NSP investigators score the instrument, "lending to yet more subjective scoring and classification." *Id.* The record does not support Welvaert's contention. During Welvaert's prenotification hearing, the clinical director of the NSP Sex Offender Registry, Shannon Black, Ph.D., under questioning by Welvaert's attorney, testified regarding the reliability of assessments completed by investigators. For example, Black noted that the instrument's author tested it for "inter-rater reliability" prior to allowing the investigators to do assessments individually. In addition, Black stated that prior to completing assessments, the investigators attend training specific to the risk assessment of sex offenders and that she is available to help investigators with questions during the completion of an assessment. Moreover, Black stated that she no longer reviews every assessment because the investigators score the instrument consistently. Furthermore, we note that even if an investigator errs during the completion of an assessment, the offender has the opportunity to correct these errors by contesting his or her classification level to a hearing officer and then to the courts if necessary.

Third, Welvaert contends that the instrument is invalid because the investigators do not conduct interviews prior to assigning offenders their presumptive classifications. However, Welvaert fails to explain why the absence of a preclassification interview invalidates the instrument. In any event, we note that

Welvaert was given the opportunity to put on evidence and testify at his prenotification hearing. Therefore, prior to the public dissemination of his registry information, Welvaert was given a meaningful opportunity to contest his classification, and his argument is without merit. See *Slansky v. Nebraska State Patrol, ante* p. 360, 685 N.W.2d 335 (2004) (determining that SORA's prenotification hearing comports with due process).

Fourth, Welvaert contends that the instrument is invalid because it "never takes into account the particulars of the crime in terms of the counting of convictions or the occasion of the acts that led to the convictions." Brief for appellant at 5. Similarly, in his fifth "argument," Welvaert states that it is "[t]roublesome . . . that the offender is never offered an opportunity to offer any mitigation in this process of classification." *Id.* These arguments are without merit. As an initial matter, an investigator doing the initial classification has the authority to depart from an offender's presumptive classification if the records that he or she reviews justify such a departure. Moreover, if offenders choose to contest their classification, they may present evidence of mitigation, including the circumstances surrounding the underlying crime, during the hearing. Therefore, offenders not only have an opportunity to rebut the facts that led to their presumptive classification level, but they also have the opportunity to present mitigating facts which may justify a downward departure.

Sixth, Welvaert contends that the instrument is invalid because "definitions used by the [NSP] in this classification process also allows [sic] the assessor to double score an individual for the same behavior." *Id.* Essentially, Welvaert's argument stems from his disagreement with his score for item 9 (use of force). Item 9 explores the nature of the sexual assault and is broken down into seven subcategories. Relevant here, Welvaert was assessed 5 points for fondling and 25 points for using physical violence or force against a victim.

At Welvaert's prenotification hearing, the investigator for the NSP was questioned about the assessment of 5 points for fondling and 25 points for physical force or violence. The investigator testified that Welvaert was assigned 5 points for fondling because a police report states that Welvaert fondled two of the victims. A review of the record reveals that the main victim

stated that Welvaert tickled and fondled her, and fondled a second underage girl. Similarly, the investigator discussed a different police report wherein a third victim reported that Welvaert " 'got on top of her and pulled her pants down around her knees. He was also placing his hand under her shirt and fondling her breasts.' " When asked why Welvaert was assessed 25 points for physical violence or force, the investigator again pointed to the third victim's statement that Welvaert " '[g]ot on top of her and pulled her pants down around her knees.' "

On appeal, Welvaert argues that the instrument's vague definitions allowed the instructor to improperly assign him 5 points for fondling and 25 points for physical force for the exact same conduct, i.e., getting on top of and pulling down the pants of the third victim. As an initial matter, we note that Welvaert does not explain why the same conduct could not lead to multiple assessments of points under different items or subcategories. Moreover, because the presence of conduct that corresponds with an item or subcategory correlates to an increased risk of recidivism, it is only logical that conduct that falls under multiple items or subcategories should be scored accordingly. In any event, the record shows that the assessment of 25 points for the use of physical violence or force was not justified solely on the basis of the aforementioned statement concerning pulling down the third victim's pants. The record reveals that after Welvaert got on top of the third victim and pulled her pants down, she " 'placed both hands on his chest and attempted to push him off.' " At this time, the victim is reported to have told Welvaert " ' "no," ' " to "get off," and to " ' "Stop it." ' " In sum, the district court's decision to uphold the NSP's assessment of points under item 9 is supported by competent evidence and is not arbitrary, capricious, or unreasonable.

Seventh, Welvaert contends that the instrument is invalid because it has a statistical error rate of 12 percent. This argument was analyzed and rejected in *Slansky v. Nebraska State Patrol, ante* p. 360, 685 N.W.2d 335 (2004). No further discussion is warranted in the present appeal.

## 2. Ex Post Facto Clause

Welvaert also contends that SORA violates the Ex Post Facto Clause of the federal Constitution. U.S. Const. art. I, § 10, cl. 1.

We have rejected this argument on two separate occasions, and we do so again. See, *Slansky, supra*; *State v. Worm, ante* p. 74, 680 N.W.2d 151 (2004).

■ Essentially, Welvaert argues that SORA violates the Ex Post Facto Clause because it was not enacted until after he was sentenced and incarcerated. The NSP, on the other hand, asserts that SORA is not a penal statute because neither the registration nor notification provisions are "punishment" so as to raise ex post facto concerns. Stated otherwise, the NSP contends that SORA is a civil regulatory scheme and that therefore, the Ex Post Facto Clause is not implicated. See, *Slansky, ante* at 377, 685 N.W.2d at 350 ("under the Ex Post Facto Clause, the retroactive application of civil disabilities and sanctions is permitted; only retroactive criminal punishment for past acts is prohibited"). See, also, *Worm, supra*.

Recently, in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), the U.S. Supreme Court, in rejecting a similar ex post facto challenge to Alaska's sex offender registration statute, stated that a two-step "intent-effects" test should be used to analyze whether a law constitutes retroactive punishment in violation of the Ex Post Facto Clause. See, *Slansky, supra*; *Worm, supra*. Under this test, "we must first determine whether the intent of the Legislature in enacting SORA was to establish a nonpunitive civil regulatory scheme for sex offenders. . . . If so, we must then determine whether SORA is so punitive in nature as to negate the Legislature's intent to deem it civil." *Slansky, ante* at 378,685 N.W.2d at 351.

(a) Legislative Intent

On two occasions, we have determined that the Legislature, in enacting SORA, intended to establish a civil regulatory scheme to protect the public from the danger posed by sex offenders. See, *Slansky, supra*; *Worm, supra*. Because these cases are dispositive of the issue and Welvaert does not contend that the Legislature had a punitive intent in enacting SORA, it is unnecessary to discuss this prong any further.

(b) Effects of SORA

Because the Legislature intended SORA to be civil in nature, its intent will be rejected only if Welvaert provides the clearest

proof that SORA is so punitive in either purpose or effect as to negate the Legislature's intent. See, *Smith, supra; Slansky v. Nebraska State Patrol, ante* p. 360, 685 N.W.2d 335 (2004); *Worm, supra.* In making this determination, we consider the factors first set forth by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). See *Slansky, supra.* They are as follows:

"(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment—retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.'"

*State v. Isham,* 261 Neb. 690, 695, 625 N.W.2d 511, 515-16 (2001), quoting *Hudson v. United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997).

Relying on these factors, Welvaert argues that SORA (1) imposes an affirmative disability; (2) operates to promote the traditional aims of punishment, retribution, and deterrence; (3) applies to behavior that is already a crime; and (4) is excessive in relation to its nonpunitive purpose. In *State v. Worm, ante* p. 74, 680 N.W.2d 151 (2004), we determined that SORA's registration provisions are not so punitive in effect as to negate the Legislature's stated intent. Therefore, only SORA's notification provisions are at issue in the following analysis.

*(i) Affirmative Disability or Restraint*

In order to determine whether SORA's notification provisions impose an affirmative disability or restraint on registered sex offenders, we must "inquire how the effects of [a sex offender registration act] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith v. Doe,* 538 U.S. 84, 99-100, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). As an initial matter, we note that although registered sex offenders are subject to public notification, they

remain free to live and work where they want without supervision. See *Worm, supra.*

Nonetheless, Welvaert argues SORA imposes an affirmative restraint because "[t]here are no statutory safeguards as to the extent to which the information may be disclosed and released to the public." Brief for appellant at 8. This is not accurate. The extent to which an offender is subject to public notification under SORA has been tailored to mirror the level of risk an offender presents to their community. See § 29-4013. If the risk of recidivism is low, only law enforcement officials who are likely to encounter the offender must be notified. § 29-4013(2)(c)(i). If the risk of recidivism is moderate, the circle of notification is broadened to include schools, daycare centers, and religious and youth organizations. § 29-4013(2)(c)(ii). If the risk of recidivism is high, notification must also be given to members of the public who are likely to encounter the offender. § 29-4013(2)(c)(iii).

Welvaert contends that the release of such information may have a debilitating effect on an offender's search for housing and employment. However,

> these consequences flow not from [a sex offender registration act's] registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant.

*Smith,* 538 U.S. at 101.

SORA's public notification provisions impose no restraint whatsoever upon the activities of Welvaert, and his argument is without merit. See, *Hatton v. Bonner,* 356 F.3d 955 (9th Cir. 2004) (determining sex offender registration and notification scheme did not impose affirmative disability or restraint); *Femedeer v. Haun,* 227 F.3d 1244 (10th Cir. 2000) (same); *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999) (same); *Russell v. Gregoire,* 124 F.3d 1079 (9th Cir. 1997) (same); *Com. v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003) (same).

### (ii) Traditional Aims of Punishment

Welvaert also contends that SORA promotes the traditional aims of punishment, retribution, and deterrence. However, Welvaert's

argument is confined to SORA's registration provisions and, therefore, is without merit under *State v. Worm, ante* p. 74, 680 N.W.2d 151 (2004).

### (iii) Criminal Behavior

Next, Welvaert contends that SORA imposes punishment because the behavior to which it applies is already a crime. As we noted in *Worm, supra*, the U.S. Supreme Court in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), concluded that this factor received little weight in analyzing the effect of Alaska's registry statute because the statute's concern was recidivism, and therefore, the offender's past criminal conduct was a necessary starting point. Relying on the Court's determination in *Smith*, we concluded that the criminal behavior factor was not relevant to determining whether a criminal registration statute imposes punishment. *Worm, supra*. Because Welvaert's past criminal conduct is also the necessary starting point for SORA's notification provisions, we again conclude that this factor is not relevant for such a determination.

### (iv) Excessiveness

Finally, Welvaert argues that SORA's notification provisions are excessive because SORA does not set forth the type of information concerning the registrant which may be released and it contains "no limitation to the geographical area in which the information may be released." Brief for appellant at 10. This argument is without merit. Under SORA, the NSP and any law enforcement agency authorized by the NSP are required to release "*relevant information* that is necessary to protect the public concerning a specific person required to register." (Emphasis supplied.) § 29-4009(3). By limiting dissemination to information that is relevant to public safety, SORA shields offenders from the publication of irrelevant personal information. See 272 Neb. Admin. Code, ch. 19, § 013.05 (2000).

Additionally, the extent of dissemination is further limited by the severity of the risk the offender is determined to present to the community, see § 29-4013, and even for the high risk offenders like Welvaert, public notification is limited. See, § 29-4013(2)(c)(iii); *Slansky v. Nebraska State Patrol, ante* p.

360, 685 N.W.2d 335 (2004) (rejecting challenge to breadth of SORA's notification provisions).

In sum, SORA's notification provisions represent a reasonable regulatory scheme in light of its nonpunitive objective. See *Smith, supra* (stating question in excessiveness inquiry is not whether legislature has made best choice possible to address problem it seeks to remedy, but whether regulatory means chosen are reasonable in light of nonpunitive objective). Applying the factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), we conclude that SORA is not so punitive as to negate the Legislature's intent to create a valid civil regulatory scheme.

## VI. CONCLUSION

For the foregoing reasons, we conclude that Welvaert's challenges to SORA and the risk assessment instrument are without merit. Therefore, the judgment of the district court is affirmed.

AFFIRMED.

WRIGHT, J., not participating.