769 N.W.2d 784 (2009)
17 Neb. App. 623
STATE of Nebraska, Appellee,
v.
Jose Juan AGUILAR-MORENO, Appellant.
No. A-08-1008.
Court of Appeals of Nebraska.
May 26, 2009.
*786 Arthur C. Toogood, Adams County Public Defender, for appellant.
Jon Bruning, Attorney General, and Stacy M. Foust, for appellee.
*787 INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
After a jury convicted Jose Juan Aguilar-Moreno of incest of his adult daughter, the district court sentenced Aguilar-Moreno to 19 to 20 years' imprisonment and required him to register as a sex offender for the remainder of his life. We conclude that the court did not abuse its discretion in allowing evidence of sexual activity between Aguilar-Moreno and his daughter that occurred outside of Nebraska and of DNA evidence concerning the paternity of his daughter's child. We vacate the court's findings regarding the registration requirement because incest of an adult is not a registrable offense. Finally, we conclude that the court did not impose an excessive sentence.

BACKGROUND
The victim in this case, T.A.C., was born in 1977 and was 30 years old at the time of trial. The State originally charged Aguilar-Moreno with first degree sexual assault, but it later filed an amended information charging Aguilar-Moreno with incest of T.A.C. based on events occurring in Adams County, Nebraska, between January 1, 1999, and August 1, 2007. After trial commenced, the court sustained Aguilar-Moreno's oral "demur[rer]" based on the statute of limitations and limited the charged conduct to that occurring between March 15, 2005, and August 1, 2007.
Following a hearing concerning the State's intention to adduce evidence of other crimes, wrongs, or acts under Neb. Evid. R. 404, Neb.Rev.Stat. § 27-404 (Reissue 2008), the court found that the evidence sought to be introduced by the Stateevidence of Aguilar-Moreno's sexual penetration of T.A.C. in Mexico and Texas and evidence that T.A.C.'s child is Aguilar-Moreno's biological childwas admissible under § 27-404(2) as evidence of opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The court conducted a 3-day jury trial beginning on March 31, 2008. After the jury was selected but prior to opening statements, Aguilar-Moreno's attorney made a continuing objection to the challenged evidence. He contended that such evidence was highly prejudicial and that the prejudice substantially out-weighed any evidentiary value.
Aguilar-Moreno denied having had sex with T.A.C. On the other hand, T.A.C. testified that Aguilar-Moreno first sexually abused her when she 16 years old and living in Mexico. She testified that Aguilar-Moreno would beat her and her mother if T.A.C. did not do as Aguilar-Moreno wanted. T.A.C. denied ever having sexual intercourse with anyone other than her father. She testified that her father impregnated her when she was 18 and that he took her to Texas, where her sonwho was 11 years old at the time of trialwas born. Aguilar-Moreno denied paternity of T.A.C.'s child and testified that he did not know she was pregnant until 3 months after they arrived in Texas.
In October 1998, T.A.C. and her son moved with Aguilar-Moreno to Hastings, Nebraska. They moved into a house with other immediate family members. T.A.C. testified that since arriving in Hastings, her father forced her to have sex with him every day. T.A.C. testified that Aguilar-Moreno would threaten to kill her if she did not have sex with him and that he said her "family was going to pay for it if [she] didn't do it."
On August 2, 2007, T.A.C. had an argument with Aguilar-Moreno over money, *788 and T.A.C. testified that Aguilar-Moreno threatened to kill her and her brothers if she left the house. Later that day, T.A.C. left the family home along with other family members and told her entire family what had been happening to her all these years. On August 21, she reported Aguilar-Moreno's sexual contact with her to the police. She testified that she did not report it earlier because she believed her father's threats and was afraid of him. Members of the Hastings police department obtained buccal swabs from T.A.C., her son, and Aguilar-Moreno. A DNA analyst performed paternity testing on T.A.C.'s child and concluded that Aguilar-Moreno could not be excluded as the father. The analyst testified that it was "84,900 times more likely that the observed DNA profiles from these individuals [was] a true paternity mother, child, and father [versus] a mother, child, and random male['s] being the father."
The jury found Aguilar-Moreno guilty of incest. During the sentencing hearing on August 18, 2008, the court stated that pursuant to Nebraska's Sex Offender Registration Act (Act), Aguilar-Moreno must register within 5 days of release from incarceration and within 5 days of any change of address for the rest of his life. In a "Journal Entry and Order" filed August 20, the court stated that it notified Aguilar-Moreno of his duties to comply with the Act and with the requirements of lifetime community supervision. The court then ordered that Aguilar-Moreno be incarcerated for 19 to 20 years but made no further mention of any registration requirements. On August 21, the judge and Aguilar-Moreno signed a "Notice of General Conditions of Civil Commitment Evaluation and Lifetime Community Supervision." The notice stated in part, "IT IS ORDERED, pursuant to the . . . Act, . . . you must register . . . for the remainder of your life." The final sentence of the order stated, "AS TO ALL OF THE FOREGOING, IT IS SO ORDERED." Also on August 21, the court entered a "Journal Entry and Order," which stated that the court notified Aguilar-Moreno of his duty to comply with the Act and that "IT IS SO ORDERED." The commitment did not refer to any registration requirement.
Aguilar-Moreno timely appeals.

ASSIGNMENTS OF ERROR
Aguilar-Moreno assigns, reordered and consolidated, that the district court erred in (1) allowing the State to present evidence of sexual activity with T.A.C. which occurred in Mexico and Texas and evidence that he is the father of T.A.C.'s child, (2) requiring him to register as a sex offender for incest of an adult, and (3) imposing an excessive sentence.

STANDARD OF REVIEW
The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Evid. R. 401, Neb.Rev.Stat. § 27-401 (Reissue 2008), and prejudice under Neb. Evid. R. 403, Neb.Rev.Stat. § 27-403 (Reissue 2008), and a trial court's decision regarding them will not be reversed absent an abuse of discretion. State v. Schmidt, 276 Neb. 723, 757 N.W.2d 291 (2008).
Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. State v. Moore, 277 Neb. 111, 759 N.W.2d 698 (2009).
A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. Id. An abuse of discretion occurs *789 when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Id.

ANALYSIS

Evidence of Sexual Activity Outside of Nebraska and Paternity.
Aguilar-Moreno argues that evidence of sexual relations with T.A.C. in Mexico and Texas and of his fathering T.A.C.'s child should have been excluded from trial because it was unfairly prejudicial. The State contends that Aguilar-Moreno has waived any error regarding the admission of this evidence because his counsel elicited testimony on the subjects during cross-examination of T.A.C. and her mother and during direct examination of Aguilar-Moreno. Ordinarily, error is waived if after a party has adduced objectionable evidence, the opposing party adduces on direct or cross-examination evidence on the same subject. State v. Rieger, 260 Neb. 519, 618 N.W.2d 619 (2000). However, the rule does not apply where the objecting party introduces similar evidence solely for the purpose of meeting the adversary's case by explaining or rebutting the original evidence. Id. We conclude that the exception to the general rule applies in this case because the testimony elicited by Aguilar-Moreno's counsel was to explain or rebut prior admitted testimony.
The district court found that the evidence at issue was admissible under § 27-404(2) as evidence of opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Aguilar-Moreno does not appear to argue that the court's determination of a proper purpose was erroneous; rather, his argument focuses on admissibility under § 27-403. We limit our analysis accordingly.
Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." § 27-403. Only evidence tending to suggest a decision on an improper basis is unfairly prejudicial. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).
The sexual assaults and events occurring in Mexico and Texas are connected with the circumstances leading to the crime charged. The evidence established that the sexual conduct occurred over a long period of time, and it showed the circumstances under which T.A.C. arrived in the United States, i.e., that Aguilar-Moreno took T.A.C. to Texas because he did not want the family to realize she was pregnant. Also, the evidence helped explain why T.A.C. did not report the sexual conduct earlier. Further, because Aguilar-Moreno denied having had sex with T.A.C., the fact that he could not be excluded as the father of T.A.C.'s child was highly probative of the issue at the heart of the casewhether Aguilar-Moreno engaged in sexual penetration with his daughter. We conclude that the district court did not abuse its discretion in allowing evidence that sexual activity occurred between T.A.C. and Aguilar-Moreno outside of Nebraska and that Aguilar-Moreno could not be excluded as the father of T.A.C.'s child, because the probative value of the evidence was not substantially outweighed by any prejudice to Aguilar-Moreno.

Registration as Sex Offender.
Aguilar-Moreno argues that the court erred in requiring him to register under the Act. The Act applies to any person who pleads guilty to or is found guilty of certain offenses listed in Neb. *790 Rev.Stat. § 29-4003(1) (Reissue 2008). State v. Hamilton, 277 Neb. 593, 763 N.W.2d 731 (2009). Certain sex offenders, including those who commit an aggravated offense or who have a prior conviction for a registrable offense, are subject to a lifetime registration requirement. See, id.; Neb.Rev.Stat. § 29-4005(2) (Reissue 2008). Other sex offenders are required to register for a period of 10 years. See § 29-4005(1).
Aguilar-Moreno contends that because § 29-4003(1)(a)(vii) applies the Act only to "incest of a minor" (emphasis supplied) and because T.A.C. was not a minor at any time of the instant offense, the Act did not impose a registration requirement upon him as a result of the instant offense. He does not discuss the fact that a prior conviction had subjected him to the Act's 10year registration requirement.
The court determined that the instant conviction caused Aguilar-Moreno to become subject to lifetime registration and supervision. During the sentencing hearing, the court ordered Aguilar-Moreno to register under the Act within 5 days of release from incarceration and within 5 days of any change of address "for the remainder of your life." The court further ordered that Aguilar-Moreno was subject to lifetime community supervision by the Office of Parole Administration. The court's written sentencing order states in its findings that it notified Aguilar-Moreno of his duties to comply with the Act. The day after the court entered its written judgment, a notification of registration responsibilities under the Actsigned by Aguilar-Moreno and the judgewas filed, and it "ordered" Aguilar-Moreno to register under the Act for the remainder of his life.
The State asserts that the registration requirement is not properly at issue in this direct appeal. We compare two Nebraska Supreme Court decisions that guide our answer to the State's assertion.
In State v. Torres, 254 Neb. 91, 574 N.W.2d 153 (1998), the court sentenced the defendant to probation and informed him of his duty to comply with the Act, but the defendant's obligation to register pursuant to the Act was not made part of the court's order. The defendant appealed, arguing that his sentence was excessive because the Act potentially increased his sentence for failing to register. The Nebraska Supreme Court stated that the defendant attempted to challenge his sentence by arguing that the Act violates state and federal Ex Post Facto Clauses, but that he was prohibited from challenging his conviction by mounting a constitutional attack on another statute. The Supreme Court determined that the Act's registration requirements were separate and collateral to any sexual offense affected by the Act and that the registration requirements "arose solely and independently by the terms of the [A]ct itself only after [the defendant's] conviction." State v. Torres, 254 Neb. at 95, 574 N.W.2d at 155.
The Nebraska Supreme Court distinguished Torres in State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004). In Worm, the defendant was subjected to the lifetime registration requirement associated with an aggravated offense. At the time of the Torres decision, the lifetime registration requirement for committing an aggravated offense did not exist. See 2002 Neb. Laws, L.B. 564. The Worm court stated that the lifetime registration requirement for an aggravated offense did not arise solely and independently from the defendant's conviction, but, rather, the court was required, as part of the sentence, to determine whether the offense was aggravated and make that fact part of the sentencing order. See § 29-4005(2). Thus, the Worm court determined that the *791 court's finding that the defendant committed an aggravated offense was part of the judgment, and it considered the constitutional challenge to the registration requirements.
While both of these decisions assist us, neither case provides a specific answer to the question before us. In the above cases, the defendants sought to challenge the requirements at issue on constitutional grounds. Here, Aguilar-Moreno is not challenging the constitutionality of the registration requirement; rather, he is arguing that the court erred in finding that he was subject to the Act based on the conviction at issue. Like the defendant in Torres, Aguilar-Moreno was not found to have committed an aggravated offense. But like the defendant in Worm, Aguilar-Moreno was subjected to a lifetime registration requirement under § 29-4005(2), rather than the 10-year registration in Torres.
In the instant case, the district court evidently recognized that Aguilar-Moreno had previously been ordered to register as a sex offender and that he was still subject to the 10-year registration period. Because the statutes required the court to make a finding of fact concerning lifetime registration as part of the sentencing judgment, we consider the situation in the instant case similar to the circumstances in Worm. Like the defendant in Worm, the court required Aguilar-Moreno to register under the Act for the rest of his life. Section 29-4005(2) instructs that a person required to register under § 29-4003 must register for the rest of his or her life if the person has a prior conviction for a registrable offense and that the court make that fact part of the sentencing order. Because § 29-4005(2) required the court's finding relating to the life-time registration requirement to be part of the court's judgment, we conclude that Aguilar-Moreno's claim is properly before us in this direct appeal.
As we have already stated, § 29-4003(1)(a)(vii) provides that the Act applies to any person found guilty of incest of a minor, pursuant to Neb.Rev.Stat. § 28-703 (Reissue 2008). Here, Aguilar-Moreno was convicted of violating § 28-703, but he committed incest of an adult. Accordingly, the district court erred in finding that Aguilar-Moreno was subject to the provisions of the Act based upon this conviction. We conclude that the portion of Aguilar-Moreno's sentence requiring him to register as a sex offender for the remainder of his life must be vacated.

Excessiveness of Sentence.
Aguilar-Moreno argues that the sentence of 19 to 20 years' incarceration is excessive and disproportionate to the severity of the offense when considered with his background and prior record. Incest is a Class III felony, which is punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment, a $25,000 fine, or both. See Neb.Rev.Stat. §§ 28-105(1) (Reissue 2008) and 28-703(2). The sentence imposed is within the statutory limit.
When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. State v. Nelson, 276 Neb. 997, 759 N.W.2d 260 (2009). In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. Id. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. Id.
*792 Aguilar-Moreno was born in 1957, and he completed 8 or 9 years of education in Mexico. He is a registered sex offender, due to an April 2000 incident because of which he was convicted of criminal trespass and sexual assault without consent. He was also sentenced to 90 days in jail for an August 2007 violation of a protection order. The court stated that Aguilar-Moreno was not a suitable candidate for probation and that there was a high likelihood that he would engage in additional criminal conduct. The court observed that testing showed Aguilar-Moreno scored in the "very high risk" range for procriminal attitude and as a high risk for recidivism. According to the presentence investigation report, Aguilar-Moreno is not amenable to treatment because of his unwillingness to admit any wrongdoing in this case and it is likely that T.A.C. will be in danger if Aguilar-Moreno were released into the community. We find no abuse of discretion by the district court in its determination of the sentence.

CONCLUSION
We conclude that the court did not abuse its discretion in allowing evidence of sexual activity between Aguilar-Moreno and T.A.C. that occurred outside of Nebraska and of evidence concerning the paternity of T.A.C.'s child because the probative value of such evidence was not unfairly prejudicial to Aguilar-Moreno. We vacate the court's findings regarding the registration requirement under the Act because incest of an adult is not a registrable offense. Finally, we conclude that the court did not impose an excessive sentence.
AFFIRMED IN PART, AND IN PART VACATED.