KELVIN LEIN, APPELLANT, V. TOM NESBITT, SUPERINTENDENT,
NEBRASKA STATE PATROL, APPELLEE.
JAMES D. OLSON, APPELLANT, V. TOM NESBITT, SUPERINTENDENT,
NEBRASKA STATE PATROL, APPELLEE.

690 N.W.2d 799

Filed January 14, 2005.   Nos. S-03-1169, S-03-1170.

Dean S. Forney, of Forney Law Office, for appellants.

Jon Bruning, Attorney General, and Mark D. Starr for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK,
and MILLER-LERMAN, JJ.

STEPHAN, J.

In these consolidated appeals, Kelvin Lein and James D. Olson
challenge their classification as Level 3 sex offenders under the
Sex Offender Registration Act (SORA), Neb. Rev. Stat. § 29-4001
et seq. (Cum. Supp. 2004). The district court for Lancaster
County affirmed orders of Tom Nesbitt, the superintendent of the
Nebraska State Patrol, upholding each classification.

## BACKGROUND

### LEIN

In 1994, Lein pled guilty to two counts of sexual assault on a
child. The victims were his two minor daughters. Lein had no

previous criminal history. In a letter dated March 27, 2000, the Nebraska State Patrol informed Lein that he had been assigned a Level 3 classification under SORA. The classification was based on answers to the 14 questions composing the Nebraska State Patrol's sex offender risk assessment instrument. Lein requested a hearing to contest his classification level, taking specific exception to items 9, 12, and 13 of the risk assessment instrument. On July 2 and December 27, 2002, a hearing regarding Lein's classification was held before a hearing officer. Lein offered the expert testimony of Dr. Laura Gaudet, and the State offered the expert testimony of Drs. Shannon Black and Mario Scalora. The substance of the testimony is detailed in relevant part below.

On January 28, 2003, the hearing officer recommended that Lein's classification as a Level 3 sex offender be upheld, based upon a determination that his overall score of 165 points on the risk assessment instrument was correct and exceeded the 130-point cutoff for Level 3 classification. The Nebraska State Patrol adopted this recommendation in full. Lein timely petitioned to the district court for Lancaster County for judicial review under the Administrative Procedure Act (APA). On September 9, the district court issued an order upholding the Level 3 classification. Lein filed this timely appeal.

### OLSON

In 1998, Olson pled guilty to one count of sexual assault on a child. The victim was Olson's minor sister-in-law. Olson's prior criminal history included one charge of larceny and one charge of disturbing the peace. He had no prior history of sex-related convictions.

In a letter dated July 14, 2000, the Nebraska State Patrol informed Olson that based upon answers to the 14 questions composing the risk assessment instrument, he had been assigned a Level 3 sex offender classification under SORA. Olson requested a hearing to contest his classification level, taking specific exception to items 9 through 14 of the risk assessment instrument.

On July 2 and December 27, 2002, a hearing regarding Olson's classification was held before a hearing officer. Olson presented the expert testimony of Gaudet, and the State presented the expert testimony of Black and Scalora. The substance of the testimony

is identical to that offered by Lein and is detailed in relevant part below.

On February 2, 2003, the hearing officer recommended that Olson's classification remain at Level 3. The hearing officer determined that while Olson's score of 190 points on the risk assessment instrument should be reduced to 160, it remained in excess of the score of 130 which is the cutoff point for a Level 3 classification. The Nebraska State Patrol adopted this recommendation in full. Olson timely filed a petition for judicial review with the district court for Lancaster County under the APA. The district court affirmed the Level 3 classification on September 9, and Olson filed this timely appeal.

The parties' stipulation to consolidate the appeals for briefing and oral argument was allowed. We then moved the consolidated appeals to our docket on our own motion pursuant to our statutory authority under Neb. Rev. Stat. § 24-1106(3) (Reissue 1995) to regulate the dockets of the appellate courts in this state.

## ASSIGNMENT OF ERROR

Lein and Olson each assign that the district court erred in upholding his classification as a Level 3 sex offender under SORA.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Slansky, supra*. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

## ANALYSIS

These appeals represent the fourth recent challenge to SORA. See, *Welvaert v. Nebraska State Patrol*, 268 Neb. 400, 683 N.W.2d 357 (2004); *Slansky, supra*; *State v. Worm*, 268 Neb. 74, 680 N.W.2d 151 (2004). In *Slansky* and *Worm*, we discussed at length the pertinent features of SORA and the rules and regulations that implement SORA. In *Slansky*, we also discussed the risk assessment instrument that was developed to classify sex offenders under SORA and is again challenged in these appeals. We therefore direct the reader to *Slansky* and *Worm* for background information regarding SORA.

In the instant appeals, Lein and Olson allege that the risk assessment instrument is invalid because "a stakeholder group . . . consisting of representatives from law enforcement, victim advocacy and defense attorneys, was brought in to determine the scoring cut-offs used to determine risk level." Brief for appellants at 8. They contend that the use of this group was unscientific and not supported by " 'fair or substantial reason.' " *Id.* at 10.

In *Slansky*, we addressed whether the risk assessment instrument was invalid because of a statistical error rate of 12 percent. In finding that it was not, we recognized that "no instrument will perfectly predict future conduct." *Slansky*, 268 Neb. at 374, 685 N.W.2d at 348. We further stated:

> "[T]he non-existence of a perfect predictor of recidivism should not preclude legislative resort to a rationally based instrument of risk assessment, developed and validated by mental health professionals." *E.B. v. Verniero*, 119 F.3d 1077, 1098 (3d Cir. 1997). In this regard, [expert] testimony concerning the instrument establishes that it was carefully and rationally crafted. While acknowledging some of the instrument's shortcomings, [an expert] testified that the instrument (1) is based on a significant amount of empirical data, (2) utilizes factors that correlate with a registrant's risk of recidivism, (3) is valid and appropriate for its purpose, and (4) is consistent with other instruments that have been developed. Consequently, we conclude that the instrument is a rationally based risk assessment tool and that the grounds [the defendant] asserted to challenge the instrument are without merit.

*Slansky v. Nebraska State Patrol*, 268 Neb. 360, 374-75, 685 N.W.2d 335, 348-49 (2004).

The expert testimony adduced by the Nebraska State Patrol in the instant cases is substantially similar to that adduced in *Slansky*. Black holds a doctorate in clinical psychology and has served as the clinical director of the Nebraska State Patrol Sex Offender Registry since 1999. She testified that the risk assessment instrument is consistent with other instruments that have been developed and is an appropriate and valid instrument for determining a sex offender's risk of recidivism. Scalora, who is associated with the Department of Psychology at the University of Nebraska-Lincoln, testified regarding the development of the risk assessment instrument. This process included a review of relevant scientific literature and risk assessment protocols from other states and a study of recidivism statistics for 1,300 sex offenders who had been discharged from Nebraska correctional institutions. The study identified and weighted statistically significant factors which had a predictive value as to the likelihood that a sex offender would reoffend. Scalora testified that Nebraska's risk assessment instrument had a predictive rate which compared favorably with other instruments designed for the same purpose.

Scalora further testified that the stakeholder group had no involvement in developing the risk assessment instrument or in determining which factors indicated a risk of recidivism. The stakeholder group was involved only in the policy decision to determine the cutoff points for the three risk categories that determine the level of notification required under SORA. This determination was based on considerations of the number of offenders that would be impacted by SORA and the potential risk for the public. The risk assessment instrument classifies offenders scoring 70 points or fewer as Level 1, considered at a low risk to reoffend. Offenders who score 75 to 125 points are considered at moderate risk to reoffend and are classified as Level 2. Those who score 130 points or above are considered at high risk to reoffend and are classified as Level 3 offenders. According to Scalora, the stakeholder group decided that 90 percent of recidivists would fall within the Level 3 risk classification. He testified that if there was bias in doing so, it was a bias in favor of public safety.

Lein and Olson contend that the use of the stakeholder group renders the risk assessment invalid. Gaudet testified that "whenever you have a stakeholder group [research] becomes more subjective as opposed to objective." However, the evidence is clear that the stakeholder group in this case was not involved in the research that formed the basis of the creation of the risk assessment instrument. Instead, the group was involved only in determining the risk level cutoff scores, a decision which by its nature requires some level of subjectivity. Moreover, there is no constitutional requirement that sex offenders be divided into risk-level categories; if the State of Nebraska chose to, it could conclude that every conviction for a sex offense provide evidence of a substantial risk of recidivism. See *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Lein and Olson's argument with respect to the stakeholder group is therefore without merit.

The testimony of Black and Scalora constitutes competent evidence which supports the decisions of the district court upholding the Level 3 classifications of Lein and Olson. Both decisions conform to the law and are not arbitrary, capricious, or unreasonable.

## CONCLUSION

For the reasons discussed, we affirm the judgments of the district court.

AFFIRMED.

WRIGHT, J., not participating.