CLIFTON MCCRAY, APPELLANT, V.
NEBRASKA STATE PATROL, APPELLEE.
710 N.W.2d 300

Filed February 3, 2006.    No. S-04-395.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for appellant.

Jon Bruning, Attorney General, Mark D. Starr, and Jeffrey J. Lux for appellee.

CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The Nebraska State Patrol (NSP) classified Clifton McCray as a Level 3 sex offender under the Sex Offender Registration Act (SORA), Neb. Rev. Stat. §§ 29-4001 to 29-4013 (Cum. Supp. 2004), and the district court for Lancaster County affirmed the classification. In *McCray v. Nebraska State Patrol*, 270 Neb. 225, 701 N.W.2d 349 (2005) (*McCray I*), we affirmed the judgment of the district court. We subsequently granted McCray's motion for rehearing and ordered that the case be reargued. During reargument, counsel for the NSP contended that an amendment to Neb. Rev. Stat. § 29-2264 (Cum. Supp. 2002), which became effective on September 4, 2005, applied to one of the issues presented in this appeal. We requested and received supplemental briefing on this issue from both parties. We now withdraw our opinion in *McCray I*, and substitute this opinion, in which we find merit in McCray's arguments that the NSP erred in scoring his SORA risk assessment and conclude that he is entitled to reclassification as a Level 2 offender.

## BACKGROUND

In 1998, McCray was convicted of three counts of third degree sexual assault. He was sentenced to 75 days in jail on one count, 45 days in jail on another count, and fined $500 on

the third count. These convictions brought him within the purview of SORA, which requires a person convicted of a sex offense to register with the sheriff of the county in which he or she resides. See §§ 29-4003 and 29-4004. The information obtained as a result of such registration is forwarded to the NSP, which maintains a central registry of persons obligated to register under SORA. § 29-4004(9). The NSP is required to determine each registrant's risk of recidivism and assign a notification level based upon the degree of risk. § 29-4013(2)(b) and (e); 272 Neb. Admin. Code, ch. 19, § 12 (2000). If the risk of recidivism is low, the registrant is classified as a Level 1 offender and law enforcement officials who are likely to encounter the offender must be notified. § 29-4013(2)(c)(i); 272 Neb. Admin. Code, ch. 19, § 13.02 (2000). If the risk of recidivism is determined to be moderate, the registrant is classified as a Level 2 offender and schools, daycare centers, and religious and youth organizations must also be notified. § 29-4013(2)(c)(ii); 272 Neb. Admin. Code, ch. 19, § 13.03. If a person is classified as a Level 3 offender, indicating a high risk of recidivism, in addition to those groups entitled to notice with respect to Levels 1 and 2 offenders, notification must also be given to members of the public who are likely to encounter the offender. § 29-4013(2)(c)(iii); 272 Neb. Admin. Code, ch. 19, § 13.04. See, also, *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004).

Based upon factors enumerated in SORA that increase the risk of recidivism, the NSP developed a risk assessment instrument which it uses to evaluate all records and data concerning the offender in order to classify every offender in the registry in one of the three risk levels. See *Slansky v. Nebraska State Patrol, supra.* A score of 70 and below on the risk assessment instrument results in a Level 1 classification, a score of 75 to 125 results in a Level 2 classification, and a score of 130 or above results in a Level 3 classification. See *id.*

McCray was initially classified as a Level 3 offender, based upon a score of 155 on a risk assessment instrument completed on December 6, 2000. He requested an administrative hearing to challenge the classification. For reasons which are not entirely clear from the record, a second risk assessment was completed

on September 3, 2002, in which McCray received a score of 195. At the time this risk assessment was completed, McCray's criminal history reflected a number of charges and convictions which were used in scoring. These included convictions for the violation of a restraining order, operation of a motor vehicle without an operator's license, and injury or destruction of another's property, as well as charges for failing to appear in court. McCray's criminal record also included eight sexual assault charges. Of those, three resulted in convictions, three were dismissed, and two were identified as being filed with other citations. In October 2002, McCray filed a request for a hearing to contest his classification.

While administrative review was pending, McCray petitioned the county court for Lancaster County to set aside a 1994 conviction for destruction of property of another, a 1998 conviction for attempted violation of SORA, and a 1999 conviction for violation of a restraining order. See § 29-2264. Section 29-2264(2) empowers a court to set aside certain criminal convictions in which the sentence does not include incarceration. In May 2003, the county court entered separate orders setting aside each of the three convictions pursuant to McCray's petitions.

On October 2, 2003, an administrative hearing was held to review McCray's challenge of his Level 3 classification. At the hearing, McCray challenged the scoring of item 2 on the risk assessment instrument, which assessed 30 points for three or more convicted counts for offenses other than traffic offenses or sex offenses. He also challenged item 14, which assessed 20 points for the fact that 24 months or less had elapsed between McCray's most recent arrest for a felony and/or Class I/II misdemeanor conviction and his prior release from court-ordered confinement or supervision. The parties stipulated that the scoring of items 2 and 14 was based entirely upon the three convictions which had been set aside in May 2003 pursuant to § 29-2264(4). McCray challenged the use of the set-aside convictions for scoring items 2 and 14. He also challenged the scoring of item 9, which assessed 30 points for the nature of his sexual assault behavior, based upon unsworn and unsigned victim statements given to police, which statements McCray argued were not correlated to any specific conviction. McCray argued

that subtraction of the 80 contested points would lower his score from 195 to 115, placing him at a Level 2 risk classification.

On October 17, 2003, the hearing officer recommended that McCray's classification as a Level 3 sex offender be upheld. The hearing officer found that "because an order setting aside a conviction does not completely negate the conviction, proceedings such as sex offender risk assessment . . . may properly consider convictions which have been set aside." With respect to item 9, the hearing officer found that the risk assessment manual does not require that an offender be convicted or even charged for an offense scored under that category. Rather, the hearing officer found that there must merely be officially documented evidence of physical force or restraint. The superintendent of the NSP adopted the recommendations of the hearing officer as the decision of the NSP on October 22, 2003.

Pursuant to the Administrative Procedure Act, Neb. Rev. Stat. § 84-901 et seq. (Reissue 1999 & Supp. 2003), McCray filed a timely petition in the district court appealing his classification as a Level 3 sex offender. The district court affirmed McCray's classification, and McCray filed this appeal in which he contended that the district court erred in finding that competent evidence supported the scoring of items 2, 9, and 14 on the risk assessment instrument.

In *McCray I*, we concluded with respect to items 2 and 14 that § 29-2264 was intended to operate prospectively and that because "McCray's convictions were not set aside until after his risk assessment instrument was completed . . . the convictions were properly considered." 270 Neb. 225, 230-31, 701 N.W.2d 349, 354 (2005). We expressed "no opinion . . . on what effect the convictions that were set aside would have on McCray's SORA assessment if the assessment had occurred after the convictions were set aside." *Id.* at 231, 701 N.W.2d at 354-55. We did not reach the issue of whether item 9 was properly scored because the subtraction of the 30 contested points from item 9 would still leave a risk assessment score of 165, which is 35 points higher than the threshold for classification as a Level 3 offender. McCray filed a timely motion for rehearing, which we granted.

## ASSIGNMENTS OF ERROR

McCray originally assigned, restated and consolidated, that the district court erred in finding that competent evidence supported the scoring of items 2, 9, and 14 on the risk assessment instrument. On rehearing, McCray assigns that we incorrectly determined in *McCray I* that the orders setting aside his non-sex-offense convictions could not be considered for purposes of risk assessment because they were entered after the risk assessment instrument was scored.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Lein v. Nesbitt*, 269 Neb. 109, 690 N.W.2d 799 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

A party may move for rehearing in an appellate court based upon any claimed mistakes or inaccuracies in statements of fact or law in the opinion, and any questions involved which the court is claimed to have failed to consider on the appeal. Neb. Ct. R. of Prac. 13D (rev. 2000).

## ANALYSIS

### MAY EVENTS OCCURRING AFTER ORIGINAL SCORING OF RISK ASSESSMENT INSTRUMENT BE CONSIDERED IN REVIEW HEARING CHALLENGING RISK ASSESSMENT CLASSIFICATION?

We first address the threshold issue raised by McCray's motion for rehearing, which is whether events which occur after the risk assessment instrument is scored but before the completion of administrative review may be considered by the reviewing officer. SORA is a civil, nonpunitive regulatory scheme designed

to protect the public from the danger posed by sex offenders. *Welvaert v. Nebraska State Patrol*, 268 Neb. 400, 683 N.W.2d 357 (2004); *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004); *State v. Worm*, 268 Neb. 74, 680 N.W.2d 151 (2004). The Nebraska State Patrol is required by law to "adopt and promulgate rules and regulations to carry out the registration provisions of [SORA]." § 29-4013(1). Under rules and regulations adopted pursuant to SORA, registrants are granted a limited review hearing to contest their classification. *Slansky v. Nebraska State Patrol, supra*; 272 Neb. Admin. Code, ch. 19, § 014 (2000). These hearings are limited to the appropriateness of a registrant's classification. *Id.*

McCray argues that if our opinion in *McCray I* means that the hearing officer may only review the accuracy of the risk assessment as of the date of the initial scoring, then a reviewing officer charged with determining the appropriate level of classification for an offender could not consider evidence of events occurring after the initial scoring, even if those events involved actual sexual recidivism. In the NSP's original brief, it agreed that the rules governing SORA are not intended to work in such a manner and that the hearing officer is "entitled to consider the latest [post-scoring] information" because the hearing officer's task is "not so much to decide whether the scorer erred, but to use the latest and best information in conjunction with the [risk assessment] Instrument and Manual in order to determine into which Risk Level Classification the offender should be placed." Brief for appellee at 12.

Our review of the regulations existing at the time of the administrative review process in this case, considered in light of the protective purpose of SORA, supports the argument that a hearing officer may consider events occurring after the initial scoring of the risk assessment instrument in arriving at a recommendation of what risk assessment level should be adopted by the NSP. The rules provided that "[n]o community notification based upon classification levels shall be made until the hearing and any subsequent appeals are final or eight (8) working days have passed since the classification notification was mailed to the offender and no request for a hearing has been received, whichever is later." 272 Neb. Admin. Code, ch. 19,

§ 014.03. At a review hearing, the offender "may present information which challenges the application of the classification instrument and which has a bearing on the risk of recidivism." 272 Neb. Admin. Code, ch. 19, § 014.02. The rules permit reclassification "if new information is received that would appear to have a bearing on the risk of recidivism." 272 Neb. Admin. Code, ch 19. § 015.01 (2000). Thus, we conclude that the orders setting aside McCray's three prior convictions could properly be considered by the hearing officer in resolving McCray's challenge to his Level 3 classification. We therefore must resolve the issue which we did not reach in *McCray I*: whether the hearing officer and the district court erred in determining that the non-sex-offenses could be used for purposes of scoring the risk assessment instrument, notwithstanding the fact that they had been set aside under § 29-2264.

### Does Setting Aside and Nullification of Conviction Pursuant to § 29-2264 Preclude Its Consideration for Purposes of Nebraska Sex Offender Risk Assessment Instrument?

At the time of McCray's review hearing, § 29-2264(2) provided:

> Whenever any person is convicted of a misdemeanor or felony and is placed on probation by the court or is sentenced to a fine only, he or she may, after satisfactory fulfillment of the conditions of probation for the entire period or after discharge from probation prior to the termination of the period of probation and after payment of any fine, petition the sentencing court to set aside the conviction.

In determining whether to grant such a petition, a court is to consider the behavior of the offender after sentencing, the likelihood that the offender would not engage in further criminal activity, and any other relevant information. § 29-2264(3). An order granting an offender's petition under § 29-2264 would "(a) Nullify the conviction; and (b) Remove all civil disabilities and disqualifications imposed as a result of the conviction." § 29-2264(4). However, the statute further provided that the setting aside of a conviction pursuant thereto did not preclude proof of the conviction for certain purposes, such as determining the sentence on any

subsequent conviction of a criminal offense. See § 29-2264(5)(a) through (g). In upholding the constitutionality of the set-aside statute, we held as a matter of law that it did not result in the granting of a pardon or partial pardon because it exempted certain civil disabilities from restoration. *State v. Spady*, 264 Neb. 99, 645 N.W.2d 539 (2002).

Each of the May 2003 orders setting aside McCray's three non-sex-offense convictions stated as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that defendant's conviction in the above-referenced matter is nullified and all civil disabilities and disqualifications imposed as a result of the conviction are removed, except for those matter [sic] specifically identified in Neb. Rev. Stat. § 29-2264(5)(a-g) (Reissue 1995).

At the time of these orders, § 29-2264(5)(a) through (g) did not specifically provide that convictions which had been nullified and set aside could nevertheless be used for assessment of an offender's risk of recidivism under SORA. However, the hearing officer concluded that because a conviction is not completely negated by a set-aside order under § 29-2264(2), it can be properly counted as a conviction for purposes of scoring the SORA risk assessment instrument. In affirming this decision, the district court concluded that "the use of other convictions in the assessment instrument" was consistent with the other purposes specifically enumerated in § 29-2264(5) for which a set-aside conviction could be used.

Statutory interpretation presents a question of law. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005). When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Id.* In the absence of ambiguity, courts must give effect to the statutes as they are written. *American Employers Group v. Department of Labor*, 260 Neb. 405, 617 N.W.2d 808 (2000). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004); *American Employers Group v. Department of Labor*,

*supra.* Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Wester,* 269 Neb. 295, 691 N.W.2d 536 (2005); *State v. Pathod,* 269 Neb. 155, 690 N.W.2d 784 (2005). It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. *State v. Warriner, supra; State v. Gartner,* 263 Neb. 153, 638 N.W.2d 849 (2002); *State v. Rubio,* 261 Neb. 475, 623 N.W.2d 659 (2001). At the time McCray's convictions were set aside, § 29-2264(5)(a) through (g) provided a specific list of purposes for which a criminal conviction could be used notwithstanding its nullification by an order entered pursuant to § 29-2264(4). We find nothing in that statutory language which would permit the use of such convictions for purposes of assessing a sex offender's risk of recidivism under SORA. The fact that such use may be logically consistent with other uses enumerated in § 29-2264(5)(a) through (g) does not permit a court to read such language into the statute.

We have, on one occasion, held that a nullified conviction may be used for a purpose not specifically permitted by § 29-2264(5). In *State v. Illig,* 237 Neb. 598, 467 N.W.2d 375 (1991), we held that a felony conviction which had been set aside pursuant to § 29-2264 could be used to prove the substantive element that the defendant was a felon in a subsequent prosecution for felon in possession of a firearm. In reaching this conclusion, we relied in part on the reasoning of *United States v. Germaine,* 720 F.2d 998 (8th Cir. 1983), in which the Eighth Circuit Court of Appeals held that a felony conviction which had been set aside under § 29-2264 could be used in proving a person was a felon for purposes of a federal firearms charge. We cited portions of that court's opinion, noting that the setting aside of the conviction did not alter its legality or establish that the defendant was innocent of the crime for which he was convicted. We further reasoned that under Neb. Rev. Stat. § 83-1,130(2) (Reissue 1987), the right of a felon to possess a firearm is not restored even after a pardon in the absence of an express authorization signed by the Governor, which the defendant had not obtained. Nothing in the holding or

reasoning of *Illig* permits us to read § 29-2264(5)(a) through (g) to authorize the use of convictions which have been set aside for purposes of risk assessment under SORA.

During the pendency of this appeal, the Legislature has addressed the precise issue before us. In 2005, § 29-2264(5) was amended to provide that the setting aside of a conviction pursuant to § 29-2264(2) shall not:

> (h) Preclude proof of the conviction as evidence whenever the fact of the conviction is relevant to a determination of risk of recidivism under section 29-4013; or

> (i) Relieve a person who is convicted of an offense for which registration is required under the Sex Offender Registration Act of the duty to register and to comply with the terms of the act.

2005 Neb. Laws, L.B. 713, § 3. Section 29-4013, which is a component of SORA, lists various "factors relevant to the sex offender's risk of recidivism" which the NSP is to consider in determining a sex offender's risk classification. These include "[a]ny criminal history of the sex offender indicative of a high risk of recidivism, including . . . [t]he number, date, and nature of prior offenses." § 29-4013(2)(b). The State contends that the amendment to § 29-2264(5) applies to this case because of a contemporaneous amendment to § 29-2264(6), which now provides that "changes made to this section by Laws 2005, LB 713, shall be retroactive in application and shall apply to all persons, otherwise eligible in accordance with the provisions of this section, whether convicted prior to, on, or subsequent to September 4, 2005." See § 29-2264(6) (Supp. 2005).

We conclude that the 2005 amendments to § 29-2264(5) are not applicable to this case. The orders setting aside McCray's convictions are final judgments which nullified the convictions and removed all civil disabilities which were not exempted from restoration by § 29-2264(5)(a) through (g) as it existed on the date of the orders. See *State v. Spady*, 264 Neb. 99, 645 N.W.2d 539 (2002). A legislative act will not be permitted, even if an intent to do so is clear, to operate retrospectively where it will have the effect of invalidating or impairing rights which have vested by virtue of the judgment of a court. *Karrer v. Karrer*, 190 Neb. 610, 211 N.W.2d 116 (1973). The 2003 orders vested

McCray with a right to have the three set-aside convictions used only for those purposes enumerated in the statute at the time the orders were entered. Applying the amended version of § 29-2264(5) to this case would have the effect of modifying the judgments to add a new purpose for which the set-aside convictions could be used, thereby impairing McCray's rights. While the Legislature is free to expand the statutory list of civil disabilities which are not restored by a judgment setting aside and nullifying a conviction pursuant to § 29-2264(4), such amendments cannot impair rights vested by judgments entered under prior versions of the statute. Accordingly, we conclude that the district court erred in affirming the NSP's use of the set-aside convictions in scoring items 2 and 14 of the risk assessment instrument used to determine McCray's recidivism risk level.

WAS THERE COMPETENT EVIDENCE TO SUPPORT SCORING
OF ITEM 9 OF RISK ASSESSMENT INSTRUMENT?

McCray also challenged the assessment of 30 points on item 9 of the risk assessment instrument, entitled "Nature of Sexual Assault Behavior." The scorer is instructed to check all of the seven listed behaviors that apply. The manual for the Nebraska sex offender risk assessment instrument (Manual) includes the following scoring criteria for item 9: "Score the nature of the sexual assault in the current offense and any previous sexual assaults noted in official documentation. Do not score any category more than once." According to the commentary set forth in the Manual, item 9 "is designed to reflect the level of risk posed by an offender who uses varying degrees of force. The greater the amount of force or the more types of force utilized, the higher the score."

McCray was scored 5 points for behavior that fell into the "Fondling/Manipulate/Seduce/Coerce/Authority" category and 25 points for behavior categorized as "Physical Force or Violence/Restrained Victim/Threatened with Weapon or Dangerous Object." The scoring was based on behavior described in exhibits 6, 7, and 8, which are transcripts of unsworn statements obtained by police from three different persons on January 14 and 15, 1997. McCray's attorney objected to the admissibility of these exhibits on the ground that there was no evidence that the

conduct alleged to have occurred in the statements was true, nor was there evidence that the statements were "relevant to any of the third degree sexual assault convictions that were used to score this instrument." McCray's objections were overruled by the hearing officer. Dr. Shannon Black, testifying on behalf of the NSP, testified that for purposes of scoring the instrument:

> We look for official documentation of those 14 items. If something is never charged or it never comes to a final conclusion, then that item would not be scored, but anything else that — if there's founded allegation, for example, in a CPS record, we would score that. So, as long [as] we have official documentation of it and — then we would score that type of behavior of that sexual assaultive incident. So it doesn't have to ultimately be a conviction because, again, we could have plea bargains or other things [where] that specific case [does] not [result in a] convict[ion], but we have official documentation of that behavior when we score that.

On cross-examination, Black admitted that she was unable to correlate any of the victims' statements to any of McCray's convictions.

The hearing officer concluded that the Manual does not require that the offender be convicted or even charged for the behavior that forms the basis of scoring item 9. She opined that there must simply be evidence of physical force or restraint in official documentation. In its de novo review, the district court agreed that item 9 had been properly scored. McCray primarily contends that exhibits 6, 7, and 8 should not have been used to score item 9 because it is unclear from the record whether the behavior described in those statements formed the basis of a convicted charge, or a charge which was either dismissed or withdrawn.

Under SORA, the NSP must consider any criminal history of the offender "indicative of a high risk of recidivism." § 29-4013(2)(b)(iii). The NSP must specifically consider:

> (A) Whether the conduct of the sex offender was found to be characterized by repetitive and compulsive behavior;
> (B) Whether the sex offender committed the sexual offense against a child;

(C) Whether the sexual offense involved the use of a weapon, violence, or infliction of serious bodily injury;

(D) The number, date, and nature of prior offenses;

(E) Whether psychological or psychiatric profiles indicate a risk of recidivism;

(F) The sex offender's response to treatment;

(G) Any recent threats by the sex offender against a person or expressions of intent to commit additional crimes; and

(H) Behavior of the sex offender while confined.

*Id.* We agree that the criminal history to which the statute refers is not limited to conduct for which the offender has been convicted. However, it does not follow that wholly unsubstantiated allegations are necessarily a part of such history. See *Matter of C.A.*, 146 N.J. 71, 89, 679 A.2d 1153, 1162 (1996) (holding criminal history factors similar to § 29-4013(2)(b)(iii) include non-conviction offenses "provided there is sufficient evidence that the offense occurred").

Item 3 of the SORA risk assessment instrument, entitled "Other Sex/Sex Related Attorney Filed Charges Not Resulting in Conviction," specifically permits the scoring of certain criminal charges which do not result in conviction. The Manual sets forth the scoring criteria for item 3 as follows:

Total number of misdemeanor or felony sex/sex related attorney filed charges that the subject had but was not convicted. *No* **convictions** should be used. Include criminal history from Nebraska and other jurisdictions. This would include any sex/sex related charges associated with the current conviction that were plea-bargained. *Include sex offense charges that have an unknown disposition, juvenile criminal adjudications (if available) and dismissed charges that were part of a plea bargain,* **but not** *wholly dismissed, declined, not guilty or nolle prosecute.*

(Emphasis in original.) Based upon the Manual and Black's testimony, it seems clear that under item 9, the scorer could include those behaviors related to the convicted sex offenses scored in item 1 as reflected in the official documentation of those convictions, inasmuch as the conviction would ordinarily establish the truth of the documentation. The scorer could also include

behaviors associated with charged offenses not resulting in con-
viction which are scored under item 3 because the prosecutor's
decision to file the charge and the absence of an acquittal or out-
right dismissal afford some basis for concluding that the facts
reflected in the official documentation are true.

In this case, however, there is nothing in the record to corre-
late the behaviors reflected in the victim statements to any of the
three sex offenses for which McCray was convicted. Moreover,
McCray received a score of "0" on item 3 of the risk assessment
instrument, indicating that he had no attorney filed sex offense
charges not resulting in conviction which could be considered
for purposes of determining his risk of recidivism. The comment
for item 3 states: "Per pre-hearing conference . . . McCray was
convicted of 3 counts [sic] charges were not plea bargained as
originally scored 08/27/02 Dr. Black." Thus, the truth of the
accounts contained in the victim statements cannot be estab-
lished on the ground that they were relied upon as a basis for
prosecution. Nor is there anything else in the record to establish
the truth of the unsworn statements.

Section 84-914(1) provides in part: "An agency may admit
and give probative effect to evidence which possesses probative
value commonly accepted by reasonably prudent persons in the
conduct of their affairs and exclude incompetent, irrelevant,
immaterial, and unduly repetitious evidence." In *McKibbin v.
State*, 5 Neb. App. 570, 577, 560 N.W.2d 507, 512 (1997), the
Nebraska Court of Appeals concluded in an income withhold-
ing proceeding that a court clerk's mere "indication" to an
attorney that a father owed back child support was insufficient
to establish that fact "even under the relaxed evidentiary rule of
§ 84-914(1)." Here, we conclude that the unsworn victim state-
ments which were not correlated to any offense for which
McCray was charged or convicted and which bore no other
indicia of probative value did not constitute competent evidence
to support the NSP's scoring of item 9 of the risk assessment
instrument.

## CONCLUSION

For the reasons discussed herein, we withdraw our prior opin-
ion, *McCray v. Nebraska State Patrol*, 270 Neb. 225, 701 N.W.2d

349 (2005), and substitute this opinion in which we conclude that the district court erred in affirming the NSP's scoring of 30 points on item 2, 30 points on item 9, and 20 points on item 14 of the risk assessment instrument used to determine McCray's risk of recidivism under SORA. Subtraction of the 80 points erroneously assessed for these three items results in a score of 115, which falls within the range for a Level 2 classification. Accordingly, we reverse the judgment of the district court and remand the cause with directions to reverse the decision and order of the NSP and remand the case to the NSP with directions to reclassify McCray as a Level 2 offender on the basis of a total score of 115 on the risk assessment instrument.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., and WRIGHT, J., not participating.