BRUCE MCINTOSH, APPELLANT AND CROSS-APPELLEE,
v. NEBRASKA STATE PATROL, APPELLEE
AND CROSS-APPELLANT.

738 N.W.2d 873

Filed August 21, 2007.    No. A-05-818.

Susan M. Ugai for appellant.

Jon Bruning, Attorney General, and Jeffrey J. Lux for appellee.

SIEVERS and CASSEL, Judges, and HANNON, Judge, Retired.

Hannon, Judge, Retired.

## I. INTRODUCTION

Bruce McIntosh appeals the order of the Lancaster County District Court affirming the decision of the Nebraska State Patrol (NSP) classifying him as a Level 3 sex offender under the Sex Offender Registration Act, see Neb. Rev. Stat. § 29-4001 et seq. (Cum. Supp. 2006). McIntosh also contends that the district court erred when it found the Nebraska sex offender risk assessment instrument conforms to the Nebraska statutes and is not arbitrary and capricious and that the court erred in affirming the assessment of points against him on three items. The NSP has cross-appealed, contending that the district court erred in reducing McIntosh's sex offender assessment score under item No. 8 by 15 points. We affirm the district court's decision on McIntosh's appeal and conclude that determination of the NSP's appeal is unnecessary because a modification would not result in a change in McIntosh's sex offender classification.

## II. STATEMENT OF FACTS

In 1994, McIntosh was convicted in Nebraska of attempted first degree sexual assault of a child (the victim was his step-daughter) and was sentenced to 3 to 5 years' imprisonment. On October 31, 2000, a sex offender risk assessment (SORA) instrument was completed for McIntosh on which he scored 200 points, putting him into the Level 3 sex offender classification, which is the highest classification.

McIntosh's SORA score was very seriously influenced by a 1990 California conviction for lewd or lascivious acts with a child under the age of 14 (the victim was the same stepdaughter that he later victimized in 1994 in Nebraska) for which McIntosh was placed on 36 months' probation. In California, in May 1992, he had filed a "Petition for Change of Plea and Dismissal Under Penal Code Section 1203.4 and Early Termination of Probation." In connection with that petition, McIntosh filed a "declaration" in which, "under penalty of perjury," he declared, "I understand that the requested dismissal will not relieve me of the obligation to disclose the conviction in response to a direct question in any questionnaire or application for public office or for licensure by any state or local agency." On May 20, the California court

ordered that "the verdict of guilty . . . be set aside, a plea of not guilty be entered, and the information is dismissed."

In order for the reader to understand the overall approach under the SORA and the related issues in this case, we summarize the items listed on the SORA and, after each item, list the point value assessed against McIntosh in these proceedings. Also, where such information is helpful, the reason for the points assessed as given on McIntosh's SORA instrument is also noted:

(1) Number of convictions for sex or sex-related offenses (including current offenses). Forty points assessed. (Two convictions.)

(2) Number of convictions for other offenses, besides traffic infractions. No points assessed.

(3) Other sex or sex-related charges not resulting in conviction. No points assessed.

(4) Age at arrest for first sex or sex-related conviction. Twenty points assessed. (Age 26 or over.)

(5) Relationship of offender to victim. Five points assessed. (Family or stepfamily.)

(6) Prior sex offense convictions in jurisdictions other than the State of Nebraska. Twenty points assessed.

(7) Victim's gender. Fifteen points assessed. (Female.)

(8) Age of sex crime victim. Thirty points assessed: 15 points for the 11-and-under age classification and 15 points for the 12-to-17 age classification. (One victim.)

(9) Use of force (includes current and previous sexual assaults). Five points assessed for "Fondling/Manipulate/ Seduce/Coerce/Authority." Twenty-five points assessed for "Physical Force or Violence/Restrained Victim/Threatened [victim] with Weapon or Dangerous Object."

(10) Release environment. Ten points assessed. (No supervision.)

(11) Disciplinary history while incarcerated. Ten points assessed. (Disciplined for nonviolent activity.)

(12) Treatment participation (considers incarceration, court-ordered, or postrelease). No points assessed.

(13) Mental and cognitive functioning. No points assessed.

(14) Calculation of time elapsed from previous release from court-ordered confinement or supervision to arrest for felony or Class I or Class II misdemeanors for which the offender was convicted or while under court-ordered conditions. Twenty points assessed. (Twenty-four months or less.)

The SORA instrument also provides for an automatic override to a Level 3 classification for certain conduct, such as victim torture, victim abduction, or articulation to authorities of unwillingness to control future sexually assaultive behavior, and also upon a professional assessment of dangerousness. It also lists mitigation factors, such as illness and age. Since the override and mitigation factors are not relevant to McIntosh's sex offender classification, they are not summarized here in full. The total points assessed as shown above were 200, which placed McIntosh into the Level 3 sex offender classification.

McIntosh requested a review of the Level 3 classification, with the contested issues identified as items Nos. 6, 8, and 9 as shown in the summary above and the validity of the SORA instrument. An administrative hearing was held on February 11, 2003. The NSP conceded that McIntosh's score should be reduced by 10 points for an error in scoring item No. 11. Thus, McIntosh's total score was reduced to a 190, which still fell above the 130-point cutoff for classification as a Level 3 sex offender.

At the hearing, Dr. Shannon Black, clinical director for the NSP Sex Offender Registry, testified on the validity and significances of some of the questions used in the SORA instrument and to their statistical significance in evaluating the recidivism of sex offenders. A police report which set forth pertinent facts of the force that McIntosh used in the crime in Nebraska was introduced. McIntosh also testified. To the extent pertinent, this evidence will be stated when the issues to which the evidence is relevant are considered. McIntosh's Level 3 classification was upheld.

McIntosh appealed his classification to the Lancaster County District Court, pursuant to the Administrative Procedure Act, see Neb. Rev. Stat. § 84-901 et seq. (Reissue 1999 & Cum. Supp. 2006). The district court reversed the decision of the NSP with regard to items Nos. 5 and 6 and lowered the point assessment from 30 points to 15 points on item No. 8, resulting

in a total decrease of 40 points in McIntosh's score, bringing his final total point assessment to 150 points. The district court found that since the adjustment to McIntosh's score still resulted in a total score exceeding 130 points, McIntosh's Level 3 sex offender classification should be affirmed as modified. McIntosh timely appealed to this court, and the NSP has filed a cross-appeal.

## III. ASSIGNMENTS OF ERROR

McIntosh contends that the district court erred (1) in finding that the Nebraska SORA instrument conforms to the Nebraska statutes and is not arbitrary and capricious and (2) in affirming the decision of the NSP classifying him as a Level 3 sex offender. On cross-appeal, the NSP contends that the district court erred in reducing McIntosh's SORA score under item No. 8 by 15 points.

## IV. STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006); *Lein v. Nesbitt*, 269 Neb. 109, 690 N.W.2d 799 (2005); *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *McCray v. Nebraska State Patrol, supra; Lein v. Nesbitt, supra; Slansky v. Nebraska State Patrol, supra.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *McCray v. Nebraska State Patrol, supra; Lein v. Nesbitt, supra; Slansky v. Nebraska State Patrol, supra.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports

those findings. *Lein v. Nesbitt, supra*; *Slansky v. Nebraska State Patrol, supra.*

## V. ANALYSIS

### 1. McINTOSH'S APPEAL

### (a) Validity of SORA Instrument

#### *(i) Failure to Include All Statutorily Required Factors*

First, McIntosh contends that the SORA instrument does not consider all the factors required by § 29-4013(2)(b) (Cum. Supp. 2000). Specifically, he claims that the SORA instrument fails to consider § 29-4013(2)(b)(iii)(A), "[w]hether the conduct of the sex offender was found to be characterized by repetitive and compulsive behavior," and § 29-4013(2)(b)(iii)(G), "[a]ny recent threats by the sex offender against a person or expressions of intent to commit additional crimes."

We have already summarized the SORA items in the statement of facts section of this opinion. We do not think it would be helpful to relist them here. We agree that some of the items in the cited statute are not directly reflected in the SORA items. Although the factors found in § 29-4013(2)(b)(iii)(A) and (G) are not set forth verbatim in the SORA instrument, each is accounted for by the instrument. For example, whether a sex offender's conduct was characterized by repetitive or compulsive behavior can be ascertained from items Nos. 1 and 2, which score a sex offender based upon prior convicted offenses, and item No. 3, which scores an offender on other sex or sex-related charges not resulting in conviction. Similarly, whether the sex offender has expressed any recent threats against a person or expressed an intent to commit additional crimes is accounted for under the third override factor, which considers whether the perpetrator has articulated to officials or treatment professionals an unwillingness to control future sexually assaultive behavior or plans to reoffend violently or sexually. Consequently, this assignment of error is without merit.

#### *(ii) Item No. 3*

McIntosh also contends that the fact that item No. 3 considers the number of sex and sex-related offenses charged rather

than actual convictions is prejudicial and should invalidate the SORA instrument. McIntosh did not raise this argument to the district court. Accordingly, we need not address it. See, *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004); *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003) (appellate court will not consider issue on appeal that was not passed upon by trial court).

### (iii) Inclusion of Statistically Insignificant Questions in SORA Instrument

McIntosh also contends that the SORA instrument includes factors which were found not to be statistically significant in a Nebraska validation study. The items that McIntosh claims are not statistically significant are item No. 4 (age at arrest for first sex or sex-related conviction), item No. 8 (age of sex crime victim), and item No. 12 (treatment participation). McIntosh further argues that item No. 5 (relationship of offender to victim) is statistically significant only for multiple victims.

Dr. Black, clinical director for the NSP Sex Offender Registry, testified that some of the questions used in the SORA instrument, including items Nos. 4, 8, and 12, were not statistically significant in evaluating the recidivism of sex offenders. However, Dr. Black then testified that items Nos. 4 and 12 were included in the SORA instrument based upon statutory considerations and the findings and other research of the representative support literature considered in the creation of the SORA instrument, even though the items did not reach statistical significance in the validation study. Item No. 8 was included in the SORA instrument based upon the representative supporting literature. Further, Dr. Black testified that item No. 5 (relationship of offender to victim) was statistically significant only for "multiple victim types."

In *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 374, 685 N.W.2d 335, 348 (2004), the Nebraska Supreme Court recognized that "no instrument will perfectly predict future conduct." Furthermore, the Nebraska Supreme Court has held that the SORA instrument is a rationally based risk assessment tool even though the instrument as a whole has a statistical error

rate of 12 percent. See *Slansky v. Nebraska State Patrol, supra.* Thus, this assignment of error is without merit.

### (b) District Court Erred in Affirming Sex Offender Classification

#### *(i) Use of California Conviction*

McIntosh claims that his 1990 California conviction for lewd or lascivious acts with a child under 14 should not be considered for purposes of the SORA because it has been set aside by the California court. He argues, "This appears to be more than a simple expungement of the record. The order actually set aside the verdict of guilty, allowed a not guilty plea to be entered, and dismissed the information. It is an outright dismissal of the original charges." Brief for appellant at 12.

In May 1992, McIntosh filed a "Petition for Change of Plea and Dismissal Under Penal Code Section 1203.4 and Early Termination of Probation." When McIntosh filed the petition for change of plea and dismissal, he submitted an accompanying "declaration" in which, "under penalty of perjury," he stated, "I understand that the requested dismissal will not relieve me of the obligation to disclose the conviction in response to a direct question in any questionnaire or application for public office or for licensure by any state or local agency." On May 20, the California court ordered that "the verdict of guilty . . . be set aside, a plea of not guilty be entered, and the information is dismissed."

The Lancaster County District Court held that McIntosh's California conviction could be used in the SORA notwithstanding the set-aside of that conviction. It did so based upon its reading of Cal. Penal Code Ann. § 1203.4 (West Cum. Supp. 2005) and an interpretation of that statute by a California appeals court in *Adams v. County of Sacramento,* 235 Cal. App. 3d 872, 1 Cal. Rptr. 2d 138 (1991). In *Adams,* the plaintiff had been denied employment as a deputy sheriff in California under a California statute which prohibits a person from being a deputy sheriff when the person had been convicted of a felony. The plaintiff had been convicted of burglary in Kansas, but that conviction had been set aside by a Kansas court. The California Court of Appeal stated and held that the set-aside of a conviction under

California law was never intended to obliterate the fact that the defendant had been convicted, but merely freed the defendant from the penalties and disabilities of the conviction, and that the applicable Kansas law was in accord. In deciding similarly, the district court in the instant case concluded that the effect of the conviction for a sexual offense and its set-aside in California is determined by California law, not Nebraska law.

At the time the district court in this case rendered its decision, neither the opinion in *McCray v. Nebraska State Patrol*, 270 Neb. 225, 701 N.W.2d 349 (2005) (*McCray I*), nor the opinion in *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006) (*McCray II*), had been issued. In *McCray I*, the Nebraska Supreme Court did not get to the issue of the effect of a set-aside under Nebraska law, but in *McCray II*, the court withdrew its opinion in *McCray I* and considered the issue of whether the setting aside and nullification of a conviction for previous sexual conduct pursuant to Neb. Rev. Stat. § 29-2264 (Cum. Supp. 2002) precluded the consideration of the conviction for purposes of the SORA. The court concluded that such convictions could not be used for the purpose of assessing a sex offender's risk of recidivism under the SORA. It is clear that if McIntosh's conviction had been set aside under Nebraska law, the previous conviction could not be used. But the set-aside upon which McIntosh relies was of a California conviction and was issued by a California court under California law.

The basis of the *McCray II* decision was stated to be that the statute under which the set-aside was issued, § 29-2264, provided that it would nullify the conviction and remove all civil disabilities and disqualifications imposed as a result of the conviction except those listed in § 29-2264(5)(a) through (g) and that none of those subdivisions could properly be interpreted to permit use of a set-aside conviction under § 29-2264 for purposes of assessing recidivism under a SORA. The trial court's order setting aside the defendant's conviction provided:

> "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that defendant's conviction in the above-referenced matter is nullified and all civil disabilities and disqualifications imposed as a result of the conviction are removed, except for those matter [sic]

specifically identified in Neb. Rev. Stat. § 29-2264(5)(a-g) (Reissue 1995)."

*McCray II*, 271 Neb. at 9, 710 N.W.2d at 307.

The *McCray II* court concluded that the trial court's order did not allow the set-aside conviction's use for purposes of assessing the defendant's risk of recidivism for purposes of the SORA. While the appeal was pending, the Legislature expanded the list of exceptions under § 29-2264(5) to include two subdivisions, (5)(h) and (i), which would have made the defendant's conviction usable notwithstanding the set-aside. The *McCray II* court held that the set-aside order was a judgment under which the defendant's rights had vested. Thus, the Nebraska Supreme Court has clearly held that a conviction set aside under § 29-2264 (Cum. Supp. 2002) could not be used for the purpose of assessing an offender's risk of recidivism by means of the SORA. However, McIntosh's conviction under California law was set aside under a California statute by a California court.

In considering the purpose of the California statute under which McIntosh's conviction was set aside, the district court noted that § 1203.4(a), after providing for the set-aside of convictions, stated that with some exceptions, a defendant whose conviction is set aside is released "from all penalties and disabilities resulting from the offense of which he or she has been convicted." The section further provided:

> However, in any subsequent prosecution of the defendant for any other offense, the conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery.

See § 1203.4(a).

Furthermore, beginning in 1981, a related California statute provided: "Notwithstanding Section 1203.4 and except as provided in Section 290.5, a person convicted of a felony sex

offense shall not be relieved from the duty to register under Section 290." See Cal. Penal Code Ann. § 290.1 (West 1988). The statute was amended in 1994 to provide, "Notwithstanding Section 1203.04 and except as provided in Section 290.5, a person who is convicted of a sex offense for which registration is required under Section 290 shall not be relieved from the duty to register under that section." See § 290.1 (West 1999). The statute was repealed in 2005.

McIntosh does not contest that he is required to register as a sex offender under California law; rather, he argues that his conviction which has been set aside "should not be allowed to be used" for purposes of determining his sex offender classification because "[t]he only exception to §1203.4 listed under §290.1 is the requirement to register. It does not list any further exceptions nor any specific uses which can be made of the [conviction set aside under] § 1203.4 . . . . Any use beyond the specific statutory language would be unreasonable." Brief for appellant at 13. This position ignores the fact that the Nebraska Sex Offender Registration Act, as well as the California statutes which provide for the registration of sex offenders, see Cal. Penal Code § 290 et seq. (West 1999 & Cum. Supp. 2007), provides not only for the registration of sex offenders but also for a system for the determination of their level of classification.

The most meaningful California case on the issues of this case that we have located is *People v. Vasquez*, 25 Cal. 4th 1225, 25 P.3d 1090, 108 Cal. Rptr. 2d 610 (2001). In that case, the Los Angeles County District Attorney petitioned to have the defendant committed under the Sexually Violent Predators Act (SVPA) on the basis of a 1980 conviction in Texas for sexual abuse of a child and a 1983 California conviction for another sexual offense. The Texas conviction had been set aside by a Texas court, and the issue was whether that conviction could be the basis for finding that the defendant was a sexually violent predator within the meaning of California statutes on the subject. The opinion states that in 1980, the defendant had received 5 years' probation for the Texas conviction. The opinion states:

> In 1986, however, the Texas prosecutor, citing defendant's subsequent conviction and 13-year state prison sentence in California, moved the District Court of Bell County, Texas,

to terminate probation and vacate the conviction, on the grounds that "justice will no longer be served by retaining the Defendant on the roles [*sic*] of the Adult Probation Office of Bell County, Texas." The Texas court granted the motion to dismiss probation, ordering that defendant's conviction be "set aside, the probation terminated, a new trial granted, and the indictment dismissed."

25 Cal. 4th at 1227, 25 P.3d at 1091, 108 Cal. Rptr. 2d at 611.

The California trial court had allowed use of that conviction for purposes of confining the defendant, but the appeals court had reversed that holding, and on further appeal, the California Supreme Court held that the conviction could be used. The relevant provision of Texas' code of criminal procedure was quoted as follows:

[A]fter a defendant has satisfactorily served a specified portion of a term of supervised release, the trial court may shorten and end the term and discharge the defendant. Under this procedure, the court "may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss" the accusatory pleading. [Citation omitted.] The defendant "shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted," except that the conviction shall be "made known to the judge" if the defendant is later convicted of another criminal offense, and the state may consider the conviction in issuing, denying, renewing or revoking child care facility licenses.

25 Cal. 4th at 1228, 25 P.3d at 1091-92, 108 Cal. Rptr. 2d at 612. The court noted that the Texas statute was analogous to the applicable version of § 1203.4(a) of the California penal code, which provided in significant part that the defendant "'shall [after his or her conviction is set aside and the accusation against him or her is dismissed] be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." *People v. Vasquez*, 25 Cal. 4th at 1228, 25 P.3d at 1092, 108 Cal. Rptr. 2d at 612.

The court stated that the question presented was whether a person "has been convicted" of an offense where the conviction has been set aside under the cited Texas statutes. *Id.* at 1229,

25 P.3d at 1092, 108 Cal. Rptr. 2d at 612. It concluded that that question could be analyzed under two parts: First, what effect does the change in status have on the conviction under Texas law; and second, does that change qualify under California's SVPA, i.e., under California law? The court recognized that the applicable version of § 1203.4, and the case law interpreting it, was relevant only indirectly in determining the meaning and effect of the Texas counterpart.

The California court reviewed the few Texas cases which considered the meaning of Texas law on the subject and concluded that the set-aside and charges dismissed under the cited Texas statute

> [do] not negate the existence of the conviction as a legally cognizable fact. "[Their] effect is merely to restore the *civil rights* of a convicted defendant, rather than to remove all evidence of the conviction . . . . [W]e do not believe that a convicted defendant's release from all penalties and disabilities . . . means that he no longer has a 'final conviction.'"

*People v. Vasquez*, 25 Cal. 4th 1225, 1229-30, 25 P.3d 1090, 1092-93, 108 Cal. Rptr. 2d 610, 613 (2001). It went on to state:

> In this regard, Texas law is in accord with that of California. "[Penal Code] section 1203.4 does not, properly speaking, 'expunge' the prior conviction. The statute does not purport to render the conviction a legal nullity. Instead, it provides that, except as elsewhere stated, the defendant is 'released from all penalties and disabilities resulting from the offense.' The limitations on this relief are numerous and substantial . . . ."

25 Cal. 4th at 1230, 25 P.3d at 1093, 108 Cal. Rptr. 2d at 613.

The court goes on to list other legal actions which appear to be to the serious disadvantage of the convicted person in which the set-aside conviction may nevertheless be used, such as disbarment proceedings, licenses for alcoholic beverages, qualification as a police officer, and participation in pari-mutuel wagering. It stated that California courts "have drawn a distinction between penalties imposed on a felon as further punishment for the crime, as to which vacation under Penal

Code section 1203.04 generally affords relief, and nonpenal restrictions adopted for protection of public safety and welfare." 25 Cal. 4th at 1230, 25 P.3d at 1093, 108 Cal. Rptr. 2d at 613. The court stated:

> [W]e explained that "action in mitigation of the defendant's punishment should not affect the fact that his guilt has been finally determined according to law." (*In re Phillips*[, 17 Cal. 2d 55, 61, 109 P.2d 344, 348 (1941)].) "That final judgment of conviction is a fact; and its effect cannot be nullified for the purpose here involved, either by the order of probation or by the later order dismissing the action after judgment." (*Ibid.*)
>
> . . . .
>
> . . . "As used in section 1203.4 of the Penal Code the words 'penalties and disabilities' have reference to criminal penalties and disabilities or to matters of a kindred nature. . . ."

25 Cal. 4th at 1230-31, 25 P.3d at 1093, 108 Cal. Rptr. 2d at 613-14. The court concluded that the SVPA statute was protective of the public. It concluded that Texas law on this point was in accord with California law, although the Texas courts have not addressed this distinction.

The defendant in *People v. Vasquez* argued the Texas set-aside was similar to a pardon and cited *People v. Terry*, 61 Cal. 2d 137, 390 P.2d 381, 37 Cal. Rptr. 605 (1964), *overruled, People v. Laino*, 32 Cal. 4th 878, 87 P.3d 27, 11 Cal. Rptr. 3d 723 (2004), to support the propositions that a pardon must be given full faith and credit in accord with article IV, § 1, of the U.S. Constitution and that the Texas set-aside should have the same effect in his case as an Oklahoma pardon which was held in *Terry* to prevent the use of the pardoned conviction in the *Terry* defendant's case. *Terry* was overruled by *Laino* in a holding that California did not have to ignore a pardon by another state for purposes of enhancing a penalty for a California crime. The *Vasquez* court stated, "As shown above, vacation pursuant to [the Texas set-aside statute] has no comparable effect under Texas law. An order under that provision restores civil rights to the defendant, but does not negate the legal cognizability of his or her conviction." 25 Cal. 4th at 1234, 25 P.3d at 1095, 108 Cal. Rptr. 2d at 616.

We conclude from *People v. Vasquez* that the California Supreme Court has determined that the statute under which McIntosh's California conviction was set aside does not prevent the use of that set-aside conviction in California proceedings under that state's SVPA, or any other proceedings wherein that conviction would be used as a basis to protect the public, even if McIntosh's rights and privileges are curtailed when, without that conviction, they would not be. In Nebraska, the *McCray II* decision clearly reaches a different result after interpreting a similar, but different, statutory scheme on the same subject. The question is which law prevails.

The conviction the NSP relies upon is a California conviction under California law. In *McCray II*, the Nebraska Supreme Court clearly held that an order setting aside a conviction is a judgment. The set-aside of McIntosh's California conviction is therefore also a California judgment. In accordance with article IV, § 1, of the U.S. Constitution, Congress has provided in significant part:

> [The] Acts [of any state legislature, and the] records and judicial proceedings [of any court of any state,] or copies thereof, [properly] authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of [the] State . . . from which they are taken.

28 U.S.C. § 1738 (2000).

The Nebraska Supreme Court has interpreted that provision as follows: "The general rule is that a judgment of a state court which had jurisdiction has the same credit, validity, and effect in every other court in the United States which it had in the state where it was pronounced." *Miller v. Kingsley*, 194 Neb. 123, 125, 230 N.W.2d 472, 474 (1975). It is clear that in California, the set-aside upon which McIntosh relies would not prevent his California conviction's use in a proceeding such as those in this case. We therefore conclude that this assignment of error is without merit.

*(ii) Scoring of Item No. 9*

McIntosh further argues that he should not have been assessed 25 points under item No. 9 (the level of force used during

current and previous sexual offenses). McIntosh testified that "[t]here was no violence, no physical violence, threatening, weapons, anything of that sort at all."

However, the police report in evidence set forth that McIntosh would "force" his stepdaughter to "'suck'" on his penis. Further, according to the report, the stepdaughter stated to the investigating officer that McIntosh would "grab her by the waist and pull her towards him, in a face to face manner, and 'rubs [sic] [his penis] against [her].'" The report also stated that McIntosh "made" his stepdaughter either rub his penis or perform fellatio at least once every day from Thanksgiving until mid-December 1993, when the police report was taken. Clearly, competent evidence supported the district court's finding and decision that the NSP properly assessed McIntosh 25 points under item No. 9.

### (iii) Scoring of Item No. 10

McIntosh also contends that the SORA instrument is flawed because "[i]n fact, an individual who is released from supervision because [he or she has] been found not to require supervision is actually penalized by this item." Brief for appellant at 15. He then argues that he has received treatment, therapy, and training and that his doctor has found his condition to be "'stable.'" *Id.* at 16. McIntosh also states that he has "changed his lifestyle to ensure that he does not reoffend." *Id.* Thus, McIntosh contends that his points should be reduced under item No. 10.

A similar argument was made in *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004), wherein the defendant argued that the SORA instrument was invalid because item No. 10 did not account for the fact that he had not reoffended in the 4 years since his release from supervision. The Nebraska Supreme Court disagreed, noting:

> [I]tem 10 assigns 10 points for offenders who are no longer under supervision because they remain at a high risk to reoffend. Therefore, although [the defendant's] behavior during the 4 years after his release from supervision is commendable, it does not provide a basis from which a downward departure in score must be made.

*Id.* at 372-73, 685 N.W.2d at 347.

In the present case, McIntosh testified that he has resided in the same residence since November 1996 and that he has maintained the same job for nearly 4 years. McIntosh further testified that he makes efforts not to reoffend such as recognizing the stressors and "red flags" that led to his offenses and dealing with the issues surrounding the offenses. He further stated that he stays out of situations that might lead him to offend and that he is aware that therapy is available if he sees "red flags" occurring. McIntosh's behavior in recent years is commendable but does not provide a basis from which a downward departure in score must be made. Thus, this assignment of error is without merit.

## 2. NSP's CROSS-APPEAL

On cross-appeal, the NSP contends that the district court erred in reducing McIntosh's sex offender assessment score under item No. 8 by 15 points. The district court found that "the fact that [McIntosh's] last sexual assault of his sole victim occurred three weeks into a second category does not support an assessment of an additional 15 points for crossing into that second identified age category" and, thus, reduced the points assessed under item No. 8 by 15 points. However, regardless of whether the 15-point credit is given or not, McIntosh's sex offender classification level remains at Level 3, and whether the credit is upheld has no effect on the outcome of this appeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994). Since a determination of this issue has no effect on the outcome of this appeal, we decline to consider it.

## VI. CONCLUSION

In sum, the decision of the district court affirming the NSP's classification of McIntosh as a Level 3 sex offender conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. Therefore, the order of the district court is affirmed.

AFFIRMED.